# Waring *versus* Pennsylvania Railroad Co. for use.

1. The gist of the action of trover is the wrongful conversion, although the taking may have been lawful.

2. Where one has the lawful possession of the goods of another, and has not converted them, trover will not lie, until there has been a refusal to deliver after demand.

3. Where goods have been converted by a bailee, it is presumed to be wrongful, and trover may be maintained without a previous demand; such presumption may be rebutted by showing permission of the plaintiff to convert the property.

4. The plaintiff, a railroad company, delivered to the defendant by mistake of plaintiff, three cars of oil, which the defendant converted to his own use. The defendant might prove that he received the oil unwittingly, and that he had received from the plaintiff no more oil than he was entitled to receive, and that if there was a mistake it was the plaintiff's.

5. If the defendant knowingly took advantage of the plaintiff's mistake and appropriated the oil of another to his own use, it would be a wrongful conversion.

November 6th 1874. Before AGNEW, C. J., SHARSWOOD, WILLIAMS, MERCUR and GORDON, JJ.

Error to the Court of Common Pleas of *Allegheny county :* Of October and November Term 1874, No. 213.

This was an action of trover, commenced October 8th 1868, by the Pennsylvania Railroad Company against Edward J. Waring who survived Robert Lafferty, partners, &c. The style of the action was afterwards amended by adding to plaintiffs' name, "for the use of the Allegheny Valley Railroad Company." The defendant pleaded, "Not guilty."

The action was brought for the value of three car loads of crude oil, delivered by the Pennsylvania Railroad Company by mistake in August 1868 to Waring and Lafferty, who were oil refiners on the West Pennsylvania Railroad, about three miles from Allegheny city. The oil belonged to other persons. It was delivered by the plaintiffs by running a train of tank cars into the siding of Waring

[Waring *v.* Pennsylvania Railroad Co.]

& Lafferty at the refinery, and leaving the cars intended for them without further notice. The cars were, as soon as could be, unloaded by pumping them into the refiners' tanks. There were no marks on the cars indicating to whom the oil was consigned. The oil had been received from the consignors by the Allegheny Railroad Company, the use-plaintiffs, and they had paid the owners of the oil for it upon ascertaining that it had not been delivered to them.

The case was tried June 2d 1874, before Collier, J.

The foregoing facts appeared in evidence and were found by the jury. There was no evidence of demand before suit; but after suit the defendant said to Creighton, the general superintendent of the plaintiffs, that "those three car loads of oil made us whole, as we are short three other cars."

The evidence for the plaintiffs, was almost altogether to establish the delivery of the oil to Waring & Lafferty.

The defendant made the following offers of evidence, which were rejected and several bills of exceptions sealed.

1. "To prove the custom of the railroad company in delivering oil at defendant's works, viz., that the railroad company run upon the siding of oil works, detach and leave the cars, which they intend refiners to pump out; that they give no other notice to refiners; that there are no cards on the cars; and that they (railroad company) expect and require refiners to pump the oil out at once, so that they can get the cars; to be followed with evidence on part of defendant, that they acted always on said custom, received and pumped out any car loads of oil then left at the siding, with the knowledge, consent and approval, and at the instance of the railroad officials."

2. "To show, that if defendant received the oil in dispute at all, it must have been received by defendant unwittingly, and through a mistake of the plaintiffs, and that in the matter of receiving it, the defendant was but passive, only doing what the plaintiffs' officers and the custom of the track required of them; also, that within five minutes after receiving the said oil, it was, by being pumped into tanks containing other oil of defendant, so mixed as to put it out of defendant's power to return to plaintiffs; and that plaintiffs were well aware of this, and that weeks had elapsed before plaintiffs discovered or claimed that a mis-delivery had been made."

3. "To show that mistakes, on the part of plaintiffs' officers, in delivering the wrong cars, or in delivering cars to the wrong persons, were frequent and notorious in 1868."

4. "To show, that defendant in August 1868 (whether they received the three car loads in dispute or not), received from plaintiffs the exact number of cars, which defendant was entitled to receive, no more and no less; and that that has been the state

of accounts, so far as car deliveries are concerned, between the plaintiffs and the defendant, since August 1868, up to the present time."

The following are points of the defendant and the answers:

2. " If the jury believe and find from the testimony, that the plaintiffs (whether by mistake or otherwise), on or about the day of August 1868, according to the usual custom of the West Pennsylvania Railroad, through its agents and employees, ran into the defendant's siding, the three car loads of oil in dispute, for the purpose, and so that the defendant might pump the same out into his, the defendant's tanks, as if the said oil were his own and had been consigned to him, and that the defendant did pump the said oil into his tanks, along with other oil, the said receipt and pumping of said oil by defendant was under and by a license from the plaintiffs, and the conversion of the same was not tortious, but justifiable."

This point was refused.

3. " If the conversion, at the time it took place, was not tortious, but justifiable; and if afterwards a demand was made by plaintiffs, which the defendant could not comply with, by reason of not having the oil in his possession, the action of trover will not lie, and the plaintiffs cannot recover in this suit."

Answer: " The question of wrongful conversion is for the jury. If wrongful, no demand was necessary."

5. " If the jury find the three car loads of oil in dispute were actually delivered by plaintiffs to the defendant in August 1868, and that such delivery only and fully, and no more than made up the number of car loads of oil and quantity of oil, which the defendant ought to have received at the time and place of delivery, from the Allegheny Valley Railroad Co., the plaintiffs cannot in this case recover.

6. " The plaintiffs in this case, under the evidence, can only recover, in the event of the jury finding that the defendant actually received and took from the Allegheny Valley Railroad Co., the West Pennsylvania Railroad Co., or the plaintiffs, in the fall of 1868, three car loads of oil more than was coming to him."

Both these points were refused.

7. " Even if the three car loads of oil involved in this suit were not the property of defendant, and actually came into the hands of defendant and were converted by the defendant, the plaintiffs cannot recover, unless they show a demand made prior to the inception of this suit."

Answer: " Demand is not necessary, if the jury find a wrongful conversion."

The court charged:— * * *

" The first step for you is to find whether the oil belonged to the plaintiffs, and under the evidence, if you believe it, the property would be sufficiently laid in them. They had charge of it as car-

[Waring *v.* Pennsylvania Railroad Co.]

riers, as bailees, allege that they delivered it and had to pay for it; and if you find that this is the fact, it would be sufficient title in law, if the other requisites are made out, which are more important. The next and the most important question for you to decide, is whether the defendant got this oil. If it was delivered to him, did he get it? did it belong to somebody else, and did he convert it to his own use. Unless the defendant got that oil, it not being his, and converted it to his own use, took it, he could not be held liable in an action of trover, because it all turns on the wrongful conversion of the oil. That he took it, it not being his property—on that point, you have evidence on both sides. The evidence of the plaintiffs follows the three cars of oil down on to the siding of the defendant; and Mr. Creighton testifies that he had a conversation with Mr. Waring, in which Waring said that these three car loads of oil, referring to these missing cars, just made them whole; that they were three cars short. That is the testimony of the plaintiffs in brief, and that testimony must satisfy you that the cars were put there by mistake, and that the oil was converted, taken and used up, by the defendant, it not belonging to him. On the other hand, Mr. Waring testifies that he did not get that oil, that he was at the works almost every day, or every day in the month, it is alleged to have been delivered: that he had bills of lading or consignments, and that none of these car numbers were on those bills; that although he may have gotten three cars, he did not get these. That is the testimony in brief on both sides, and you will have to determine on which side the weight lies.

"Mr. Waring does not, it is true, testify positively that these identical cars were not received. He testifies that he got none of these numbered cars, as far as the record he kept shows. You are to take this testimony and say which way you think the weight of it lies, if you find from the weight of the evidence, that the defendant did not take these cars, did not convert the oil, you find for the defendant; but if the weight of the evidence should satisfy you that the defendant did get that oil by mistake, did convert it to his own use, you find for the plaintiffs, for the market value of the oil at that time.

"The learned counsel for the defendant has asked me to charge you that there must have been a demand made, before the suit was brought, or the plaintiffs cannot recover.

"That question I have reserved: I am of opinion now, that if you find there was an actual conversion, a wrongful conversion, a demand is not necessary, that that is one of the exceptions. However, I have reserved that question, in case you should find for the plaintiffs. In this case the action is trover, tort. Under the law of tort, you have to find whether the plaintiffs had a title, whether the oil was delivered by mistake, and whether the defendant wrongfully converted it to his own use. If it was not con-

signed to him and he converted it he would have to pay the market value, and any claim he had, would have to be disposed of in another suit." * * *

The verdict was for the plaintiffs for $2354.22.

The court afterwards entered judgment for the plaintiffs on the verdict, on the reserved point. The defendant took a writ of error and assigned for error,—the rejection of his offers of evidence, the answers to his points and entering judgment on the reserved point.

*W. S. Purviance*, (with whom was *S. A. Purviance*), for plaintiff in error.—Trover does not lie when by mistake of the plaintiffs chattels not the defendant's are delivered to him and mixed with his own so as to be undistinguishable and inseparable, and so that when demanded by the plaintiffs they can not be delivered. The act of defendant not being tortious, trover will not lie : 9 Bacon's Abridgment 629 ; Stephen on Pleading 137 ; Youl *v.* Harbottle, Peak's N. P. 49 ; Stephenson *v.* Hart, 4 Bing. 476 ; Packard *v.* Getman, 4 Wendell 613 ; Rushworth *v.* Taylor, 3 Ad. Ellis N. S. 699. Where one coming lawfully into possession of the property of another parts with it before a demand, he is not liable in trover : 1 Hilliard on Torts, 592, 693 ; Boobier *v.* Boobier, 39 Maine 406 ; Kelsey *v.* Griswold, 6 Barbour 436.

*J. Dalzell*, (with whom was *J. H. Hampton*), for defendants in error.—Trover will lie although the conversion is the result of a mistake : Forsyth *v.* Wells, 5 Wright 294, 2 Troubat & H. Prac. 49. Every assumption of property in, or exercise of authority over, the goods of another, inconsistent with the title of the rightful owner, or in exclusion of his right, is a conversion : Bristol *v.* Burt, 7 Johns 254. The question as to the right of a claimant to have his property again in its original state, or improved in character, did not arise in this case. If it had, it could not have affected the question of the form of remedy, but only of the measure of damages, and the question of intent would then have become material : Salisbury *v.* Coon, 3 Comstock 379. Evidence of conversion in an action of trover is matter of fact for the jury, and although the evidence be not strong, the judgment will not be reversed because the jury found that fact : Harger *v.* McMains, 4 Watts 418. Demand and refusal are only evidence of conversion, and if conversion be shown otherwise, they need not be proved : Horsefield *v.* Cost, Add. 153 ; Kelsey *v.* Griswold, 6 Barbour 440 ; Jacoby *v.* Laussatt, 6 S & R. 300.

Evidence of set-off is not admissible in an action of tort. Evidence therefore that the defendant had not received his exact number of cars was irrelevant : Neiler *v.* Kelly, 19 P. F. Smith 403 ; Work *v.* Bennett, 20 Id. 484 ; Fowler *v.* Gilman, 13 Metc. 267 ; Chamberlin *v.* Shaw, 18 Pick. 283 ; McCombie *v.* Davis, 7

East 5; Doane *v.* Russel, 3 Gray 382; Romig *v.* Romig, 2 Rawle 249.

Mr. Justice GORDON delivered the opinion of the court, January 4th 1875.

Lord Mansfield defines the action of trover to be, "a remedy to recover the value of personal chattels wrongfully converted by another to his own use:" 1 Chit. Plead. 146. The taking may have been lawful, hence the gist of the action lies in the wrongful conversion. Where one has the lawful possession of the goods of another, and has not converted them, this action will not lie until there has been a refusal to deliver them upon demand made. Ordinarily where such goods have been converted by the bailee, the law presumes it to be wrongful, and the action may be brought without a previous demand; but such presumption may be rebutted, showing a permission from the plaintiff to convert the property. So we may suppose a case of this kind: A. purchased a ton of wheat flour from B., a miller, B. delivers to A. a ton of wheat flour belonging to C., and A. converts it to his own use. Now it cannot be that B., as bailee of C., can maintain trover against A., without first explaining to him the mistake, and demanding of him a return of C.'s flour; for here the conversion is not wrongful, but permissive, there being nothing in the transactions which would lead A. to suppose that he had gotten any but his own property.

This example will apply to the case in hand. The defendant offered to prove that he had received from the railroad company no more car loads of oil than he was entitled to. This, as we understand the offer, not by way of recoupment, which was not permissible, but to show that he received the oil in good faith, supposing it to be his own. By his subsequent offers, he proposed to prove, that if he received the oil in dispute at all, it was by a delivery from the plaintiffs' agents; if there was an error, it was produced by the plaintiffs, and finally that the defendant received the property "at the instance and request of the plaintiffs."

The offers should not have been overruled. Had the proof therein proposed been produced, it is clear the plaintiffs had no case.

On such showing the defendant did no wrong, there was no wrongful conversion, and the action of trover would not lie. We observe no error in the charge, or in the answer to the points. Under the evidence, as admitted, they were correct. A wrongful conversion of the oil in question by the defendant, would sustain the action, and if he, or the firm of which he was a member, knowingly took advantage of the mistake of the plaintiffs' agents, and appropriated the property of another to the use of the firm, it would be such a conversion. This is the substance of the charge, and is, so far as it goes, a sound exposition of the law.

The judgment reversed, and a *venire facias de novo* awarded.