[No. 31478. Department One. May 31, 1951.]

PHIL SHAFFER, *Respondent*, v. R. C. WALTHER *et al.*, *Appellants.*[1]

[1]Reported in 232 P. (2d) 94.

*Skeel, McKelvy, Henke, Evenson & Uhlmann* and *Donald S. Voorhees*, for appellants.

*Lloyd Holtz*, for respondent.

DONWORTH, J.—Plaintiff brought this action against R. C. Walther and his wife, Lulu Walther, formerly Lulu Shaw, for damages allegedly caused by defendants' wrongful eviction of plaintiff from his place of business and taking possession of his stock of meats, his butcher tools and other personal property.

Defendants counterclaimed, asking payment of overdue rent and damages for the plaintiff's failure to keep the premises in proper repair and to perform other obligations under their tenancy agreement. Trial was had in the superior court before a jury.

At the close of plaintiff's evidence the cause was dismissed as to the defendant R. C. Walther, because he had no interest in the property involved, and the trial proceeded with Lulu Walther as the sole defendant. She will be referred to as the appellant.

After the testimony was concluded, the jury returned a verdict in favor of plaintiff in the sum of two thousand dollars. Defendant moved for judgment notwithstanding the verdict, or, in the alternative, for a new trial. The trial court stated that it would grant a new trial unless plaintiff accepted a reduction of five hundred dollars in the amount of the verdict, which reduction was accepted. Thereupon defendant's motion for a new trial was denied and judgment was entered against the defendant in the sum of fifteen hundred dollars. Defendant appealed from this judgment.

The testimony concerning the alleged eviction of respondent from appellant's property is in direct conflict, but the jury was entitled to believe the essential facts to be as follows: Appellant is the owner of certain premises known as Shaw's Cold Storage Lockers and Supermarket located in South Park, which is south of the city limits of Seattle.

Respondent leased the meat market in this establishment, and certain equipment used in connection therewith, from appellant on April 12, 1948, for a period of one year, the rental being a sum equal to $3\frac{1}{2}\%$ of respondent's gross receipts each month. Shortly before the lease was to expire appellant and respondent had a conversation in which it was agreed that respondent could hold over; respondent's version being that he could stay for another year at least, appellant's version being that he could stay "as long as things were right." After April 12, 1949, respondent continued as a tenant for a period of several months on a month-to-month basis.

On Monday, September 12, 1949, appellant told respondent that she wanted to take over the market. Here again the testimony of the parties is in conflict. According to respondent, he protested, asking that he be allowed to keep it for the remainder of the year 1949, or at least until the end of the hunting season. Appellant insisted upon taking over at the end of the week. On the following Saturday, appellant asked respondent if he were going to come over Sunday or Monday to take inventory. He informed her that he was coming over on Monday to do business. On Monday, September 19th, the parties happened to meet at a meat-packing establishment where both were engaged in buying a meat supply for the week's business. Appellant, having bought her meat, proceeded to the market and with two butchers, whom she had employed during the preceding week, was commencing business when respondent arrived there. He asked her if she were going to do business there and when she replied affirmatively, respondent stated that he was going to do business there also.

They then had a conversation, the content of which is in dispute, although it appears that respondent asserted his right to the premises. He claimed that he was entitled to thirty days' written notice of termination of the tenancy and told her that she had better consult with her attorney before evicting him. She did call her attorney, and, according to respondent, returned and said, "Phil, you got me over

a barrel but I'm going to operate this meat market anyway." Appellant admitted stating that she definitely told respondent that she was going to run the market.

Appellant then offered to buy his meat inventory for two hundred fifty dollars, which respondent admitted at the trial was its reasonable value. According to appellant, this offer was refused, respondent claiming that he had at least five hundred dollars "coming out of the place." Upon appellant's refusal to pay this amount, respondent left the premises and consulted his attorney.

On the premises when he left were his tools and other personal property incidental to the trade of butchering, as well as the meat inventory. He testified that the total value of these items was $539.50, plus one hundred dollars worth of accounts receivable. Respondent made no attempt to take any of his property with him. Subsequently, appellant sent a letter to respondent telling him that she had placed his meat in a locker on the premises and asking him to take it. This letter was received later on the same day that respondent verified the complaint in this action. One week later, appellant's attorney wrote respondent's attorney a letter asking him to request respondent to remove his tools, meat, and other property at once. Apparently this personal property, at the time of the trial, was still on the premises and was still being held for respondent.

Appellant assigns as error the giving of instruction No. 13 and also instruction No. 16.

No. 13 reads as follows:

"In the event that you find that the plaintiff was wrongfully evicted from these premises, then the defendant wife would be liable for the reasonable value of the merchandise, supplies and tools claimed by the plaintiff. This is because the act of holding these things would be conversion. There is no duty on the plaintiff to remove these items if they were wrongfully taken from him."

Appellant excepted to this instruction, as well as instruction No. 16, for the reason that it permitted the jury to find that appellant was liable for conversion of the meat

and the tools and other personal property and to award as damages the value thereof.

In instruction No. 16 the jury were told that in assessing the damages (if they should find for respondent):

" . . . You may also take into consideration the reasonable market value of the stock of meats and other merchandise, butcher tools, cleavers, knives, paper, twine, and other personal property, if any, placed by the plaintiff upon said premises and there at the time, to-wit: September 19, 1949, that the defendant took possession of said premises. . . ."

■ Under the evidence in this case, we think that the giving of these two instructions constituted reversible error because there was no showing that appellant exercised any dominion over these articles of personal property inconsistent with, or in denial of, respondent's right of ownership.

Respondent's own testimony plainly negatives any basis for finding that there was a conversion. On cross-examination respondent testified:

"Q. (by Mr. Voorhees) Did she at any time tell you that you could not take that meat from there? A. No, there was nothing said about that part. Q. How about your tools? Did she tell you you couldn't take your tools away from there? A. There was nothing said about that. Q. You knew that you could have taken them if you wanted to? Isn't that right? A. I don't know if I could. I think I have a letter there where she wrote me, if you want to see that. But the lawsuit was already started."

In her testimony, appellant testified that, when respondent left the premises on September 19th, she did not indicate that he could not take his personal property. She testified on this matter as follows:

"Q. . . . Did the plaintiff leave the market during the morning? A. I would say in the neighborhood of maybe ten-fifteen or shortly after that, around that time anyhow. Q. During that time did you at any time indicate to him, to the plaintiff, that he could not pick up his tools or his twine or paper? Did you indicate to him he couldn't pick up his personal tools? A. Personal tools? Meat Cutters' tools to a butcher are his personal property; and when you call the

union for a meat cutter, they bring their tools with them. It is their very own personal property. Q. Did you indicate to him that he could not have his tools? A. No. Q. You did write a letter subsequent to that time, which was read in evidence this morning,— A. Yes. Q. —telling him that he could pick up what he had there. . . ."

Controversies arising out of similar facts have been before this court on two previous occasions. In *Browder v. Phinney*, 37 Wash. 70, 79 Pac. 598, appellant claimed to have been wrongfully evicted from certain premises and claimed, among other damages, the reasonable value of goods that had been taken from the premises by the landlord. This court held that there could have been no conversion for the reason that, after the eviction, the goods were first tendered to the tenant, who refused to take them, and had then been stored in a public warehouse in the tenant's name. In *Pappas v. General Market Co.*, 104 Wash. 116, 176 Pac. 25, where there was also a wrongful eviction and a claim for damages for the conversion of goods on the premises, we held that there was a conversion. In that case the goods were neither tendered to the tenant nor held for him, but were sold by the landlord to a third person and thus the tenant was deprived of them.

The facts in the *Browder* case and those in this case are quite similar. While here there was no tender of the goods to the tenant until the day this action was begun, the question whether or not there was a tender is immaterial in this case because there was no attempt by the tenant to remove the goods when he left the premises nor was any attempt on the part of the landlord made to prevent their removal. There was no sale of the goods to a third person, as in the *Pappas* case, so that case is not in point.

In *Clark v. Groger*, 102 Wash. 188, 172 Pac. 1164, the facts relied upon to establish a conversion were stated as follows:

"On January 26, 1917, Mrs. Groger and August Sold went to the brewery and notified plaintiff that it was the intention of the corporation to take possession, and called upon him to remove his property. When he returned after his din-

ner hour he found the doors barred and locked and a guard in charge, who informed him that he would not be permitted to enter. He did enter the building later in the afternoon, after securing permission from Groger and a pass from his attorney. Plaintiff did not remove any of his property at that time, nor did he attempt then or thereafter to do so."

In holding that there had been no conversion, this court said:

"But it cannot be held arbitrarily that the mere taking of goods is sufficient to sustain an action for conversion. A wilful, or even an unlawful taking, will not always amount to conversion. There must be some assertion of right or title that is hostile to the true owner. In the instant case, the trustees, by resolution, disclaimed any intention of claiming as owners. They not only admitted the title of the plaintiff, but made a demand that he remove his property. His answer to this demand was not made with a moving van, but by filing an action in damages for conversion.

"This phase of the case is learnedly treated in *Lee Tung v. Burkhart,* 59 Ore. 194, 116 Pac. 1066, where it is said:

" 'In an action of trover it is not sufficient that the facts show a mere trespass, without showing a conversion. . . . There may be an actual, wrongful exercise of dominion over chattels without constituting a conversion, if such dominion is not a denial or repudiation of the owner's right or title.'

"And this we understand to be the doctrine of *Browder v. Phinney,* 37 Wash. 70, 79 Pac. 598."

In the Oregon case, cited in the foregoing quotation, the landlord, having been ordered by the municipal authorities to remove her building because it was unsafe, requested her tenants to take their goods out of the building. Upon their refusal, she took possession of the goods and stored them in a warehouse in the tenant's name. It was held, after a thorough review of the authorities, that there had been no conversion. In discussing the essential elements of conversion, the supreme court of Oregon said:

". . . While in 8 Words & Phrases, 7111 (citing *Waring v. Pa. R. R. Co.,* 76 Pa. 491, 496), this definition appears:

" 'The taking may have been lawful; hence the gist of the action lies in the wrongful conversion. Where one has the lawful possession of the goods of another, and has not

converted them, this action will not lie until there has been a refusal to deliver them on demand made.'

"See, also, *Boulden v. Gough*, 4 Pennewill (Del.) 48, (54 Atl. 693).

" 'A conversion is the gist of the action, and without conversion neither possession of the property, negligence, nor misfortune will enable the action to be maintained.' 8 Words and Phrases, 7112.

"In order to maintain an action for conversion, there must have been, on the part of the defendant, some unlawful assumption of dominion over the personal property involved, in defiance or exclusion of the plaintiffs' rights, or else a withholding of the possession from the plaintiffs, under a claim of right or title inconsistent with that of the plaintiffs. *Thweat v. Stamps*, 67 Ala. 96, 98; *France v. Gibson*, 101 S. W. (Tex. Civ. App.) 536; *Swank v. Elwert*, 55 Or. 487 (105 Pac. 901)." *Lee Tung v. Burkhart*, 59 Or. 194, 116 Pac. 1066.

The Michigan case of *Mattice v. Brinkman*, 74 Mich. 705, 42 N. W. 172, involved facts similar to this case. There the plaintiff had paid his month's rent and had found another location for his business. While he was away, but before he had moved his equipment and before the term for which he had paid rent had expired, the defendant (his landlord) broke into the place and took possession, moving plaintiff's equipment into one part of the building. The Michigan court found that there was no conversion, saying:

"Here the right of the plaintiff to the personal property was never denied, and it was his own fault that he did not regain his goods. They were simply moved from one place in the building to another as a necessary act in the taking of possession by defendant of the building. To call this a conversion, because defendant had no right to so move them, when the possession of or title to them in the plaintiff was never questioned, and they were neither lost nor destroyed by such moving, would not only be unjust, but such a holding would find no support in the law."

Our recent decision in *Martin v. Sikes, ante* p. 274, 229 P. (2d) 546, which discusses the legal principles relating to acts of conversion, involved facts which raised the question of the necessity of taking possession of the personal property by the defendant. The discussion is not directly

applicable here because in this case the element of possession is not involved. We are concerned here with the question whether appellant exercised any dominion or control over the property in defiance of respondent's rights.

We have examined the case of *Bickford v. Hupp*, 83 Wash. 427, 145 Pac. 454, cited as controlling by respondent, and find it inapplicable for the reason that in that case the goods were sold to a third person, which act obviously constituted a conversion.

Since the record contains no evidence from which the jury could have found appellant guilty of conversion, we are of the opinion that the trial court's instructions No. 13 and the portion of No. 16 quoted above were erroneous. Appellant's motion for a new trial should have been granted.

With regard to the claimed wrongful eviction of respondent by appellant, the evidence strongly supports respondent's position. Appellant admitted in her testimony that on September 19, 1949, after discussing the situation with her attorney three times on the telephone, she persisted in her assertion to respondent that she was going to run the market, even though she had given him no written notice of termination of his tenancy.

The trial court correctly instructed the jury that a month-to-month tenancy must be terminated by a written notice, served on behalf of the landlord on the tenant more than twenty days prior to the end of the month, requiring surrender of possession at the end of that period. The jury was further instructed that the parties could orally agree upon some other method of terminating the tenancy and such method would be binding upon the parties.

Appellant claimed that such an oral agreement existed between the parties. Her proof in support of this contention (in addition to her own testimony) consisted of declarations by respondent to third persons, made during the week of September 12th, to the effect that he thought that would be his last week at the market. There was also testimony that respondent stated to third persons that appellant was taking over the market and that he would be

leaving the following Saturday. Respondent, testifying in rebuttal, either denied making such statements or endeavored to explain the circumstances under which he made some of them.

This issue as to whether or not there was a wrongful eviction was a question for the jury to decide. They found for respondent on this issue and fixed his damages at two thousand dollars. However, since instructions No. 13 and No. 16 erroneously permitted the jury to include the value of the personal property in their award of damages, we must remand this case to the superior court for a new trial upon the issue of whether there was a wrongful eviction and, if so, what sum should be awarded respondent as damages therefor.

In appellant's exception to instruction No. 16, she objected also on the ground that it permitted the jury, in awarding damages, to consider any losses as well as profits shown by the operation of respondent's business and, in effect, permitted the jury to award damages for the loss of prospective profits. Since this problem may arise again on the retrial of this case, we deem it proper to say that we consider this objection to be without merit. In our opinion, reading instruction No. 14 in conjunction with No. 16, the jury could not have understood that anything could be awarded to respondent by reason of the loss of any prospective profits.

While appellant was entitled to an instructed verdict for rental accruing between September 1st and September 19th in the stipulated sum of $82.50, this amount upon a retrial should be offset against any damages that may be awarded respondent for wrongful eviction. The trial court did not err in denying appellant's motion for judgment n.o.v. because it was (and will be) the function of the jury to fix the amount of respondent's damages.

Because of the errors above noted in giving the two instructions excepted to by appellant, the judgment is reversed and the case remanded with instructions to grant appellant a new trial limited to the issue of the alleged

wrongful eviction of respondent and the amount of damages flowing therefrom, if any, and to the issues set forth in appellant's cross-complaint.

SCHWELLENBACH, C. J., BEALS, HILL, and FINLEY, JJ., concur.