1998 ND 169

Karla PAXTON, Plaintiff and Appellant,

v.

Theodore and Sandra WIEBE,
Defendants and Appellees.

Civil No. 970151.

Supreme Court of North Dakota.

Sept. 15, 1998.

Gregory Ian Runge (argued), Bismarck, for plaintiff and appellant.

Gregory L. Lange (argued), of Richardson, Lange & Donovan, Hazen, for defendants and appellees.

Scott T. Solem (appearance), of Alexander and Solem Law Office, Beulah, for defendants and appellees.

MARING, Justice.

[¶ 1] Karla Paxton appeals from the trial court's judgment denying her claims for conversion, intentional infliction of emotional distress, and related damages, but awarding her treble damages for wrongful eviction. In her notice of appeal, Paxton also appeals from an order compelling discovery, dated October 14, 1996, and an unspecified order entered on October 24, 1995. Because we conclude the district court committed no error, we affirm.

I

[¶ 2] In late-September 1994, Karla Paxton moved from Montana to Beulah, North Dakota. With the assistance of a women's resource center, Paxton rented a mobile home from Theodore and Sandra Wiebe (Wiebes), who own a small trailer court and did not require a deposit or a written lease. The Wiebes put Paxton's utilities in their name because she could not afford the deposits.

[¶ 3] The Wiebes permitted Paxton to move into larger mobile homes, and although she planned to purchase one, she never signed a contract. The Wiebes allowed Paxton to use two of their cars and to rent their van. The Wiebes also hired Paxton to care for Sandra Wiebe's 89–year–old father. While caring for him, Paxton stole over $1000 from him, and she later pled guilty to the theft. Finally, due to Paxton's theft and the deterioration in her work quality and attitude, the Wiebes decided things were not working out. In mid-December 1994, Sandra Wiebe told Paxton it would be best if she moved out of the mobile home she was renting, and Paxton agreed. For the next two weeks, Paxton's mobile home appeared uninhabited, and the Wiebes assumed Paxton was no longer living in the mobile home.

[¶ 4] On December 30, 1994, Theodore Wiebe learned Paxton was staying with friends in Hazen and called her there. During this conversation Paxton told Wiebe she was moving out. When Wiebe asked when she would move her belongings, Paxton replied she had other things to do. Paxton also did not pay rent for January 1995. By January 7, 1995, the Wiebes changed the locks on the mobile home. On January 10 and 11, 1995, the Wiebes moved Paxton's remaining personal property to their farmstead. There were unsuccessful efforts in March, April, and May to have Paxton retrieve her property and pay bills she owed. Paxton made no further effort to retrieve her property over the next four months. In August 1995, Pax-

ton commenced this action against the Wiebes alleging wrongful eviction, conversion of Paxton's personal property, and emotional distress resulting therefrom.

[¶ 5] A bench trial was held on November 5 and 6, 1996. On December 5, 1996, the trial court issued its Memorandum Opinion. On December 18, 1996, the trial court issued its Findings of Fact, Conclusions of Law and Order for Judgment, and Judgment. The judgment granted relief for Paxton in the amount $900 for Wiebes' unlawful eviction under N.D.C.C. § 47–16–15, and granted relief to the Wiebes against Paxton in the amount of $188.03 for unpaid bills and van rental. The judgment also denied Paxton's claims of intentional infliction of emotional distress, conversion, compensatory damages, and exemplary damages. Paxton was to retrieve her property at her expense within 45 days of the entry of judgment. Because the above judgments were offsetting, judgment was entered in Paxton's favor against the Wiebes in the sum of $711.97. The notice of entry of judgment was served on December 24, 1996.

[¶ 6] On February 25, 1997, 63 days after the notice of entry of judgment was served, Paxton served a motion for new trial under Rules 59(b) and 60(b)(ii), N.D.R.Civ.P., arguing grounds of newly discovered evidence and the trial court's judgment was against established law. This motion was filed on February 28, 1997. In an order dated March 17, 1997, the trial court denied Paxton's motion. Paxton appeals to this Court with faxed copies of the Notice of Appeal received by the Clerk on May 16, 1997, and the original documents filed May 19, 1997.

## II

■ [¶ 7] The Wiebes initially assert this Court's jurisdiction to hear Paxton's appeal is limited because Paxton violated certain procedural rules of this Court which are jurisdictional. "In a civil case the notice of appeal required by Rule 3[, N.D.R.App.P.,] must be filed with the clerk of the trial court within 60 days of service of notice of entry of the judgment or order appealed from." N.D.R.App.P. 4(a). "The running of the time for filing a notice of appeal is terminated as to all parties by a *timely motion* filed in the trial court by any party under the North Dakota Rules of Civil Procedure hereafter enumerated in this sentence...." *Id.* (emphasis added).

[¶ 8] In this case, the notice of entry of judgment was served on December 24, 1996. Paxton's motion for a new trial, based on Rule 59(b), N.D.R.Civ.P., and 60(b)(ii), N.D.R.Civ.P., was served on February 25, 1997, 63 days after service of the notice of entry, and was filed on February 28, 1997, 66 days after service of the notice of entry. On March 17, 1997, the court issued an order denying Paxton's motion for a new trial. Paxton's notice of appeal was filed May 16, 1997.

[¶ 9] Rule 59, N.D.R.Civ.P., as was in effect in 1996 and 1997, allows a motion for a new trial to be "made" within 60 days after notice of entry of judgment, and Rule 6(e), N.D.R.Civ.P., allows three additional days when the notice is served by mail. Paxton thus had 63 days from December 24, 1996, to "make" her Rule 59(b) motion.

[¶ 10] The Wiebes contend Paxton's notice of appeal was untimely because Paxton's motion for new trial based upon Rule 59(b) was not timely in that it was not *filed* within the 63 day time limit. Thus, the running of the time for filing a notice of appeal was not terminated. For purposes of this case, we disagree.

[¶ 11] The issue to be resolved can be stated as follows: when is a Rule 59(b) post-judgment motion "timely" so that when it is filed, it terminates the running of the time for filing a notice of appeal. The Wiebes present an interesting argument that in order for Paxton's Rule 59(b) motion to be a "timely motion" it must be *filed* within the time period of 63 days. In support of their proposition, the Wiebes point to the language of Rule 3.2, N.D.R.O.C., regarding submission of motions, which throughout refers to "service and filing" as part of making a motion. The Wiebes also point to the requirement that a notice of appeal must be *filed* and that mailing does not satisfy this filing requirement. *See Filler v. Bragg*, 559

N.W.2d 225, 227 (N.D.1997); *Moe v. Moe,* 460 N.W.2d 411, 412 (N.D.Ct.App.1990).

[¶ 12] In *Schaff v. Kennelly,* 61 N.W.2d 538, 543 (N.D.1953), this Court analogized the making of a motion to the commencement of an action "in that it seeks the determination of the court with respect to a right claimed by the moving party." In *Schaff,* we found no statute required filing as a condition precedent to the making of a motion, and service was sufficient even though nothing had been filed with the trial court. *Id.* *Schaff* was decided, however, before the adoption of the North Dakota Rules of Civil Procedure. The Wiebes argue Rule 3.2, N.D.R.O.C., now requires filing the motion as a condition precedent to "making" a Rule 59 motion.

[¶ 13] We have said generally under Rule 1.1, N.D.R.O.C., that Rule 3.2, N.D.R.O.C., applies to all motion practice unless there is a conflicting rule governing the matter. *Duncklee v. Wills,* 542 N.W.2d 739, 741 (N.D. 1996). We conclude the language found in Rule 59, N.D.R.Civ.P., and Rule 4, N.D.R.App.P., prior to the March 1, 1998, amendments to these rules, does conflict with the language of Rule 3.2, N.D.R.O.C., requiring "service and filing" and, therefore, Rule 3.2, N.D.R.O.C., does not govern this case.

[¶ 14] Prior to the March 1, 1998, amendments, Rules 59 and 4 contained language which supported the proposition a motion need only be "served" to be made. Although Rule 59(c), N.D.R.Civ.P., only used general terms stating, "A motion for a new trial must be *made* not later than the following time after notice of entry of judgment," Rule 59(i) stated, "[T]he court may grant a motion for a new trial, *timely served,* for a reason not stated in the motion." (Emphasis added.) Furthermore, Rule 59(j) provided, "A motion to alter or amend the judgment *must be served* not later than 10 days after notice of entry of the judgment." (Emphasis added.) This language demonstrates that "service" was contemplated as the operative action in making a post-judgment motion. Additionally, Rule 4(a)(6), N.D.R.App.P., stated in part, "if the motion is *served* not later than 10 days after the notice of entry of judgment." (Emphasis added.) This language, also, was present before the March 1, 1998, changes took effect.

[¶ 15] Effective March 1, 1998, Rule 59, N.D.R.Civ.P., and Rule 4, N.D.R.App.P., were amended so as to require "service and filing" in an effort to provide a consistent uniform measure for determining when post-judgment motions must be made. These amendments to the North Dakota rules were prompted, at least in part, by amendments to the Federal Rules of Civil Procedure.

[¶ 16] Rules 50, 52, and 59, Fed.R.Civ.P., were amended, effective December 1, 1995, to provide a consistent uniform measure for determining when post-judgment motions must be made. *Minutes of Joint Procedure Committee* 10 (Sept. 26–27, 1996). Prior to these 1995 amendments, "the federal rules were inconsistent as to whether a post-judgment motion must be 'served,' 'made' or 'filed' not later than 10 days after entry of judgment." *Id.* "After the 1995 amendment[s], the federal rules require post-judgment motions to be 'filed' not later than 10 days after entry of judgment." *Id.* at 10–11. Because similar inconsistencies were also present in the North Dakota rules, an effort was undertaken in North Dakota to provide comparable consistency among post-judgment motions. *See Minutes of Joint Procedure Committee* 18 (April 25, 1996); *Minutes of Joint Procedure Committee* 10 (Sept. 26–27, 1996); *Minutes of Joint Procedure Committee* 8 (Jan. 30, 1997).

[¶ 17] Of particular interest in this case are the Joint Procedure Committee's minutes regarding the amendments to Rule 59, N.D.R.Civ.P., and Rule 4, N.D.R.App.P. Regarding the March 1, 1998, amendments to Rule 59, the minutes of the Joint Procedure Committee state, "The operative date for determining when the motion must be made is changed to 'served and filed' rather than just 'served.'" *Minutes of Joint Procedure Committee* 8 (Jan. 30, 1997). The minutes further provide, "To obtain consistency, Rule 4 is changed to require 'service and filing' rather than just 'service.'" *Id.* These minutes appear to support the proposition that prior to the March 1, 1998, amendments to Rule 59 and Rule 4, only service was re-

quired to make a timely post-judgment motion.

[¶ 18] The dissent argues, however, service alone was insufficient to make a motion for a new trial under Rule 59(c), N.D.R.Civ.P. The dissent reasons "that a motion is *made* to the *court* is fundamental ... because a motion is made to the court, not the opposing party, the motion for a new trial was not timely made." [1] We have not previously had the opportunity to address the issue of whether, prior to the 1998 amendments, a motion could only be "made" by filing with the court within the statutory period. [2] We look respectfully, however, to the interpretation given by the Federal courts to similar provisions of the Federal Rules of Civil Procedure. *Farm Credit Services of Mandan v. Crow*, 501 N.W.2d 756, 758 n. 2 (N.D.1993); *Shafer v. Job Service of North Dakota*, 464 N.W.2d 390, 391 (N.D.1990).

[¶ 19] The gist of our problem is the meaning we should ascribe to the word "made" as it was used in Rule 59(c), N.D.R.Civ.P., prior to March 1, 1998. The federal courts' interpretation of the pre-1995 Rule 52(b), Fed. R.Civ.P., supports the proposition that a motion could be "made" by "service" on an opposing party. Rule 52(b), Fed.R.Civ.P., prior to December 1, 1995, and Rule 52(b), N.D.R.Civ.P., prior to March 1, 1998, both used the word "made." The relevant part of N.D.R.Civ.P. 52(b) read almost exactly the same as its Federal counterpart: "Upon motion of a party *made* not later than ten days after notice of entry of judgment the court may amend its findings or make additional findings...." (Emphasis added.) The clear majority of federal courts concluded a Rule 52(b) motion could be "made" if "served" upon the opposing party within 10 days after entry of judgment. The seminal case for this proposition is *Keohane v. Swarco, Inc.*, 320 F.2d 429, 431–32 (6th Cir.1963) (holding a Rule 52(b) motion was timely made when it was served upon the opposing party within 10 days but not filed with the court until the 11th day). [3] In reaching its conclusion, the *Keohane* court relied on Professor Moore's treatise, in which the Professor stated: " 'Although Rule 52(b) refers to a motion of a party 'made,' while Rule 59(b) and (d) refer to a motion 'served,' there is no difference in effect, *since a motion is 'made' by causing it to be served.*' " *Id.* at 431 (citing 5A Moore, *Federal Practice*, § 52.11[1] n. 8 (2d ed.1979) (emphasis added)). [4] Although the *Keohane* court acknowledged Professor Moore cited

1. The dissent quotes from a recent treatise on motion practice in support of the proposition that under the pre–1998 version of N.D.R.Civ.P. 59(c) a "motion is made to the court, not to the opposing party." A portion of that quotation states "whenever an attorney asks a court for something and the court must respond with a ruling or an order, a motion has been made." Dissenting op. at ¶ 48 (citing Haydock, et al., *Motion Practice*, ch. 1:1 (3d ed.1998)). Professor Haydock further states, however, in a chapter entitled *Service and Filing of Motions: Timing*, "A motion is made when it is served, not when it is filed." Haydock, *supra* § 2.6.2, at 2:14 (footnote omitted).

2. We note, however, this Court in *Crosby v. Sande*, 180 N.W.2d 164, 167–68 (N.D.1970), although not directly addressing the issue at hand, determined a motion for a new trial served upon opposing counsel twelve days after judgment was entered was timely "made" under Rule 59(c), N.D.R.Civ.P. *See id.* at 168 (stating since "[t]he motion for a new trial was served upon opposing counsel by mail on April 25, 1968 [12 days after entry of judgment] ... the motion was *made* within 60–day period") (emphasis added).

3. The *Keohane* court reached this interpretation primarily because Rule 5(d), F.R.Civ.P., "grants a reasonable time after service to file the motion," and as such, "[t]here would not be much reason to have Rule 5(d) if the papers had to be both served and filed within the 10 day period." *Keohane*, 320 F.2d at 431. We recognize our version of Rule 5(d) does not contain the same language which the *Keohane* court and other federal courts rely on. Nonetheless, we are persuaded that Rule 5(d)(2), N.D.R.Civ.P., which provides, "All affidavits, notices and other papers designed to be used upon the hearing of a motion or order to show cause shall be filed at least 24 hours before the hearing," has the same effect here. That is, Rule 5(d)(2) would be superfluous if the former Rule 59(c) required filing with the court in order to be "made."

4. Federal Rule 52(b), of course, has since been amended. The current version of Professor Moore's treatise still recognizes, however, that "[b]efore the amendment, the rule required that the motion be *made* not later than 10 days after judgment was entered. This language was interpreted to mean that the motion had to be *served* not later than 10 days after the entry of judgment." Moore, *Federal Practice*, § 52.61[1] (3d Ed.1998).

no particular case for this proposition, it nonetheless concluded the motion which was served but not filed within ten days "was timely made." *Keohane*, 320 F.2d at 432.[5]

■ [¶ 20] In light of the language from Rules 59(i), 59(j), and 4(a)(6), N.D.R.Civ.P., contemplating "service" as the operative action in making a post-judgment motion, and the 1998 amendments to Rules 50, 52, and 59, N.D.R.Civ.P., providing a consistent uniform measure for determining when post-judgment motions must be made, and the federal courts' interpretation prior to 1995 that a motion could be "made" by "service" within the prescribed statutory time period, we conclude prior to the March 1, 1998, amendments to Rules 59 and 4, N.D.R.Civ.P., only service was required to make a timely post-judgment motion for a new trial.

[¶ 21] It is, however, clear from the minutes that the March 1, 1998, amendments require post-judgment motions now be "served and filed," as opposed to only "served," within the prescribed time periods in order to be considered timely motions. The next question is whether this requirement of "service and filing" should be applied to Paxton's Rule 59(b) motion which was served on February 25, 1997, and filed on February 28, 1997.

■ [¶ 22] Article VI, Section 3 of the North Dakota Constitution and N.D.C.C. § 27–02–09 authorize the North Dakota Supreme Court to promulgate rules of procedure. It is solely within the discretion of the Supreme Court to determine the effective date of a rule of procedure not affecting substantive rights.[6] *See Larson v. Independent School District No. 314*, 305 Minn. 358,

233 N.W.2d 744, 747 (1975). Pursuant to Rule 86, N.D.R.Civ.P., the North Dakota Rules of Civil Procedure became effective on July 1, 1957, and governed "all further proceedings in actions then pending" unless the presiding court believed their application would not be feasible or would work an injustice, "in which event the procedure existing at the time the action was brought applies." Our Court has maintained this practice "as the existing rules are amended or new rules are added because it establishes a uniform pattern which civil actions can follow but still permits the court to apply prior rules in pending cases where fairness and justice so warrant." *Holloway v. Blue Cross of North Dakota*, 294 N.W.2d 902, 906 (N.D.1980); *see also Long v. Simmons*, 77 F.3d 878, 879 (5th Cir.1996) (stating amendments to the Federal Rules of Civil Procedure should be given retroactive application "to the maximum extent possible"); *Skoczylas v. Federal Bureau of Prisons*, 961 F.2d 543, 546 n. 4 (5th Cir. 1992) (noting the general rule that an appellate court will apply amended rules in effect at the time the appeal is decided "unless such an application would work a 'manifest injustice' ").

[¶ 23] In this case, we conclude that requiring Paxton's Rule 59(b) post-judgment motion to be "served and filed" within the 63 day period would work an injustice because her post-judgment motion would then be untimely. We thus will apply the Rule 59, N.D.R.Civ.P., and the Rule 4, N.D.R.App.P., which were in effect prior to the March 1, 1998, amendments. As discussed above, these rules only required Paxton's Rule 59(b) motion be "served" within 63 days in order to

---

5. We note also that prior to 1995 the federal courts contemplated "service" as the operative action in making a post-judgment motion under Fed.R.Civ.P. 59(b). *See, e.g., Sinett, Inc. v. Blairex Labs., Inc.*, 909 F.2d 253, 253 (7th Cir.1990) (stating "[t]he motion for a new trial must be *served*, not filed, within ten days of the judgment."); *Allen v. Ault*, 564 F.2d 1198, 1199 (5th Cir.1977) (stating "[f]ederal courts and commentators who have confronted this issue have concluded that Rule 59(b) applies to the time of service and not to time of filing...."). Indeed, as pointed out by the dissent, the operative word in Federal Rule 59 at the time these cases were decided was "served" and not "made." These

courts nonetheless assumed, we believe, that a Rule 59(b) motion was timely "made" when "served" (and not necessarily filed) within ten days after entry of the judgment. To the extent these courts required only timely service for a Rule 59(b) to be timely made, they are in disagreement with the dissent's general notion that since a motion must be "made" to the court, proper service can only be attained by "filing" with the court.

6. N.D.C.C. § 1–02–10 which applies to retroactivity of statutes is not controlling where application of amended procedural rules to pending actions is in issue, as here.

be a timely motion. Paxton's post-judgment motion was, therefore, timely.

[¶ 24] Because we conclude Paxton's Rule 59(b) motion was timely, we also conclude Paxton's May 16, 1997, notice of appeal, appealing from the December 1996 judgment[7] and two orders preceding the judgment, was also timely.

[¶ 25] In Paxton's motion for a new trial and brief in support of the motion, Paxton only argued that the trial court erred by failing to find the Wiebes had committed conversion, and accordingly award damages, and that new evidence justified punitive damages. The trial court denied Paxton's motion.

[¶ 26] We have stated: " 'It is well settled that where a motion for a new trial is made in the lower court[,] the party making such a motion is limited on appeal to a review of the grounds presented to the trial court.' " *Andrews v. O'Hearn*, 387 N.W.2d 716, 728 (N.D. 1986) (citation omitted). "This restriction of appealable issues applies not only to review of a denial of the motion for a new trial, but also to the review of the appeal from the judgment itself or from a denial of a motion for judgment notwithstanding the verdict." *Id.* This rule forecloses appellate review of alleged errors which Paxton has raised on appeal, but which were not raised in her motion for a new trial.

[¶ 27] Additionally in this case, Paxton only appeals from the December 18, 1996, judgment and two orders which preceded the judgment. No appeal was taken from the order denying her post-judgment motions; therefore, the merits of Paxton's post-judgment motions are not before us. *See, e.g., St. Aubbin v. Nelson*, 329 N.W.2d 874, 875–76 (N.D.1983). What remains before us are the merits of the appeal from the December 18,

1996, judgment, limited to the issues raised by Paxton in her motion for a new trial. We, therefore, only review the merits of the appeal from the trial court's judgment, limited to the issues regarding the trial court's denial of Paxton's conversion claim and related damages against the Wiebes.[8]

### III

[¶ 28] On appeal, Paxton contends the trial court erred by failing to find the Wiebes committed conversion and accordingly award damages. "Conversion is a tort having its origin in the old common law action of trover." *Dairy Dept. v. Harvey Cheese, Inc.*, 278 N.W.2d 137, 144 (N.D.1979). Conversion consists of "a tortious detention of personal property from the owner, or its destruction, or a wrongful exercise of dominion or control over the property inconsistent with or in defiance of the rights of the owner." *Sargent County Bank v. Wentworth*, 547 N.W.2d 753, 762 (N.D.1996); *Napoleon Livestock Auction, Inc. v. Rohrich*, 406 N.W.2d 346, 351 (N.D.1987). Conversion generally does not require a bad intention on the converter's part, but rather only requires an intent to exercise control or interfere with an owner's use to an actionable degree. *Harwood State Bank v. Charon*, 466 N.W.2d 601, 603 (N.D.1991). As we have previously stated:

> The intent required is not necessarily a matter of conscious wrongdoing but rather *the intent to exercise control or interference of such a degree as to require a forced sale of the plaintiff's interest in the goods to the defendant.* The tort is generally committed by an unauthorized transfer or disposal of possession of goods to one who is not entitled to them. [C]onversion may [also] occur by way of refusal to surrender

---

7. In her notice of appeal, Paxton appeals from a judgment "entered on the 8th of December, 1996." The judgment in this case was actually filed on December 18, 1996; however, we have said no date is ordinarily necessary in a notice of appeal in order to give this Court jurisdiction. *See St. Aubbin v. Nelson*, 329 N.W.2d 874, 875 (N.D.1983).

8. Paxton did not appeal from the order denying her motion for a new trial. On appeal, however, Paxton raises issues which were argued on her motion for a new trial. Although the parties did not raise the question, our Court has previously determined issues presented on the motion for a new trial are reviewable on appeal notwithstanding the fact the party appeals from the judgment and not from the order denying the motion for a new trial. *Roberts v. Hail Unlimited, Div. Of Intern. Bus.*, 358 N.W.2d 776, 777 n. 1 (N.D. 1984) (citing *Staiger v. Gaarder*, 258 N.W.2d 641, 643–44 (N.D.1977)).

possession of the property to one who is entitled to it. Where there has been no wrongful taking or disposal of the goods, but rather the defendant rightfully came into possession, demand and refusal to return are usually necessary to the existence of the tort. (Emphasis added.)

*Dairy Dept.*, 278 N.W.2d at 144 (citing Prosser, *Torts* § 15 (4th ed.1971)). "The gist of a conversion is not in acquiring the complainant's property, but in wrongfully depriving him of it, whether temporarily or permanently, and it is of little relevance that the converter received no benefit from such deprivation." *Christensen v. Farmers State Bank of Richardton*, 157 N.W.2d 352, 357 (N.D.1968).

[¶ 29] We have held the trial court's determination about whether a conversion has been committed is a finding of fact which will not be overturned on appeal unless it is clearly erroneous. *Harley Miller Const., Inc. v. Russell*, 481 N.W.2d 459, 463 (N.D. 1992). A finding of fact is clearly erroneous when, although there is some evidence to support it, the reviewing court is left with a definite and firm conviction a mistake has been made. *Harwood*, 466 N.W.2d at 604.

[¶ 30] Here, the trial court specifically found Paxton failed to provide sufficient evidence demonstrating that the Wiebes deprived Paxton possession of her personal property, either permanently or even for an indefinite time. The trial court essentially found the Wiebes did not exercise the necessary dominion or control over the personal property so as to deprive or interfere with Paxton's possessory rights to an actionable degree. "[T]he fact that a defendant in possession of real property on which he finds chattels of another removes the chattels to a warehouse or other place of storage has been held in effect not to be such an assertion of ownership or control over the chattels as to render the defendant liable for conversion." *See* 18 Am.Jur.2d *Conversion* § 38 (1985).

[¶ 31] Paxton contends her personal property was converted by the Wiebes the day they changed the locks on the mobile home on or about January 7, 1995. "It is not, however, every unauthorized taking of goods from the possession of another which is sufficiently serious to amount to conversion. In-

tention may be good, the duration brief, the event harmless; and if so, the severe remedy of the forced sale to the defendant will not be applied." W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 15, at 94 (5th ed.1984). The trial court necessarily concluded there was no evidence of a sufficiently serious interference with Paxton's right of control over her personal property. The trial court's findings of fact indicate attempts, both preceding and following the change of locks, by the Wiebes to arrange for Paxton to retrieve her personal property.

[¶ 32] The trial court found Paxton agreed in mid-December 1994 to move out after Sandra Wiebe told Paxton it would be best if she moved out of the mobile home she was renting. The trial court found Paxton again told Theodore Wiebe on December 30, 1994, she was moving out. When he asked her when she would move her belongings, she told him she had other things to do. The trial court found Paxton did not offer nor did she pay rent for January 1995, which would have been due Tuesday, January 5, 1995. The trial court also found the Wiebes changed the mobile home's locks on January 7, 1995, but that this conduct was neither extreme nor outrageous based upon Paxton's apparent absence from the home during the last two weeks of December and her statements of intention to move out shortly before her January rental payment was due.

[¶ 33] Although the trial court concluded the Wiebes' failure to give Paxton 30–days notice before putting new locks on the mobile home violated § 47–16–15, N.D.C.C., and awarded Paxton treble damages of $900, this failure to give notice does not necessarily provide sufficient evidence to establish an action for conversion. *Cf. Nye v. Johnson*, 72 N.D. 95, 4 N.W.2d 819, 821 (1942) (stating "nonfeasance or neglect of a legal duty by which property is lost to an owner will not support an action for conversion as something more ... must be shown; something equivalent to affirmative action is necessary"). "Even where the tenant alleges that he was wrongfully evicted, the landlord is not liable in conversion for taking from the premises personalty belonging to the tenant, where the landlord in no way exercises do-

minion over the personal property in derogation of the tenant's rights." 49 Am.Jur.2d *Landlord and Tenant* § 239 (1995). *See Shaffer v. Walther*, 38 Wash.2d 786, 232 P.2d 94, 96–97 (1951) (holding there could be no conversion after the wrongful eviction for the reason that the lessor did not exercise any dominion over the personal property inconsistent with lessee's right of ownership).

[¶ 34] The trial court found the Wiebes moved Paxton's personal property to their farmstead on January 10 and 11, 1995, where it was kept until the time of trial. The trial court found that in mid-February 1995, Paxton had a friend ask the Wiebes when she could retrieve her property and what bills she owed. The Wiebes told the friend that Paxton should contact them directly. In April, Sandra Wiebe again asked Paxton to retrieve her personal property.

[¶ 35] The trial court found Paxton then arranged to move the property on May 6, 1995, but when she called the Wiebes on May 5th to make arrangements, the Wiebes informed her they would be out of town on that day. The Wiebes then offered to transfer the property the following day; however, Paxton flatly refused. Paxton made no further efforts to retrieve her property over the next four months until filing this action in August 1995.

[¶ 36] We conclude these findings of fact support the trial court's finding Paxton failed to provide sufficient evidence demonstrating the Wiebes converted her personal property. It is clear the Wiebes made repeated requests, after Paxton expressed her intention to move, to have Paxton retrieve her personal property. They never refused to return her property to her and always acknowledged Paxton's ownership.

[¶ 37] Although there is conflicting evidence, we are not left with a firm and definite conviction the trial court made a mistake in finding Paxton failed to prove conversion. We conclude, therefore, the trial court's findings are not clearly erroneous and it properly denied Paxton's conversion claim and damages arising therefrom.

## IV

[¶ 38] Because the trial court's denial of Paxton's conversion and damages claim was not clearly erroneous, we affirm the trial court's judgment.

[¶ 39] MESCHKE, J., concurs.

VANDE WALLE, Chief Justice, concurring in result.

[¶ 40] I concur in the result reached in the majority opinion written by Justice Maring. I do so although I believe the logic and better practice is that outlined in Justice Sandstrom's opinion. I expect it is for that reason outlined in Justice Sandstrom's opinion the rules now require post-judgment motions be filed as well as served.

[¶ 41] However, insofar as there was confusion as to when the motion was "made" for purpose of determining whether or not Paxton's notice of appeal was timely, I concur with the result reached by Justice Maring. In *Dehn v. Otter Tail Power Co.*, 248 N.W.2d 851, 856 (N.D.1976) this court, in deciding an appeal was timely, observed "we are acting consistent with the objective we have often stated in the past when motions for dismissal were made on the basis of other of our Rules of Appellate Procedure. That objective is that, whenever reasonably possible, a case should be disposed of on its merits. *LeFevre Sales, Inc. v. Bill Rippley Construction, Inc.*, 238 N.W.2d 673 (N.D.1976)."

[¶ 42] When, in deciding whether or not an appeal is timely, there is reasonable confusion as to the meaning of the rule, I favor a result which allows the specific appeal to proceed and the case determined on its merits. The rule can be amended so the procedure for future appeals is clear. That, in effect, is what happened here. The opinion written by Justice Maring permits the appeal to proceed on its merits. The rule, amended subsequently to the appeal, establishes a clear, and in my opinion and that of Justice Sandstrom, the better procedure for future appeals.

[¶ 43] Finally, I agree with Justice Maring's review of the merits of the appeal, and I concur in the result because it "is the same result that would have been achieved if the

appeal ... had been dismissed for lack of jurisdiction." *See Hayden v. Workers Compensation Bureau,* 447 N.W.2d 489, 500 (N.D.1989) (VandeWalle, J., concurring specially).

[¶ 44] Gerald W. VandeWalle, C.J.

SANDSTROM, Justice, dissenting.

[¶ 45] Because there was no conflict between N.D.R.Ct. 3.2 and the effective version of N.D.R.Civ.P. 59, and because a motion is made to the court, not to the opposing party, the motion for a new trial was not timely made. Therefore, I would dismiss, and I dissent from Justice Maring's opinion. For the parties in this case, the result may be a distinction without a difference, but for the law, the result would have great consequence. For example, under the majority theory, during a trial a party could move for a mistrial by serving the opposing party, but without telling the court anything; yet, the majority would say the motion for a mistrial was "timely made."

I

[¶ 46] That a motion is *made* to the *court* is fundamental. "Rule 7(b)(1) defines a motion as an application to the court for an order." Charles Wright & Arthur Miller, *Federal Practice and Procedure* § 1190 (1990). The footnote to the sentence states, "Motions are application to the court," citing lengthy authority, including Federal Rule of Civil Procedure 7(b)(1). Federal Rule 7(b)(1) requires that "[a]n application to the court for an order shall be by motion which, unless made during a hearing or trial, shall be made in writing, shall state with particularity the grounds therefor, and shall set forth the relief or order sought." Fed.R.Civ.P. 7(b)(1). North Dakota's Rule 7(b)(1) exactly mirrors the federal.

[¶ 47] *Moore's Federal Practice* states, in the section on motions, that a motion is an application to the court for an order. 2 Jeremy C. Moore, *Moore's Federal Practice,* § 7.03(1) (3rd ed.1998). This section also references Federal Rule 7(b)(1), and quotes it, stating "motions [under the Rule] must

contain 'an application to a court for an order.'"

[¶ 48] "A motion is commonly defined as any request to a court for an order." David F. Herr, Roger S. Haydock, and Jeffrey W. Stempel, *Motion Practice,* ch. 1:1 (3d ed.1998). "The term does not apply to requests that do not call for entry of any order by the court. In other words, whenever an attorney asks a court for something and the court must respond with a ruling or an order, a motion has been made." *Id.*

[¶ 49] *Black's Law Dictionary* 1013 (6th ed.1990) defines motion:

> An application *made to a court or judge* for purpose of obtaining a rule or order directing some act to be done in favor of the applicant.... It is usually made within the framework of an existing action or proceeding and is ordinarily made on notice, but some motions may be made without notice. One without notice is called an ex parte motion. *Written or oral application to court for* ruling or order, made before (*e.g.* motion to dismiss) during (*e.g.* motion for directed verdict), or after (*e.g. motion for new trial* ) trial.

(Emphasis added; footnotes omitted). American Jurisprudence 2d further enunciates the "black-letter law":

> A motion is an application *made to a court or judge* for the purpose of obtaining a rule or order directing some act to be done in favor of the applicant. It is not regarded as a pleading in the ordinary or technical sense, even where it is reduced to writing.

56 Am.Jur.2d *Motions* § 1 (1971). (Emphasis added; footnotes omitted).

> The time for making motions is frequently prescribed by statute or rule of court requiring, generally, that a motion be brought within a certain period of time after an event. For example, a motion challenging a pleading generally must be filed within a certain number of days after the pleading is filed. On the other hand, a motion may be denied as prematurely sought.
>
> The place of making motions is frequently prescribed by statute or rule of court. Statutes generally require a motion to be

made in the county or in the court where the action is pending but permit motions and orders which may be made at chambers or outside of court to be made in any part of the state.

*Id.* at § 8. (Footnotes omitted).

As a general rule, motions are made orally. Thus, in some jurisdictions, a motion is not made by merely filing an application in writing with the clerk of the appropriate court; it is necessary to move the court or judge viva voce to grant the order. In other jurisdictions, however, a motion is deemed to be made when the notice of motion is served *and the motion papers and proof of service are filed.* Statutes in some states require certain motions to be made in writing, and in some jurisdictions, by rule, a motion not made during a trial or hearing must be in writing unless the court permits it to be made orally.

*Id.* at § 9. (Emphasis added; footnotes omitted).

Although *in some cases notice of a motion is not required,* generally, a party interested in resisting the relief sought by a motion has a right to notice sufficient to give him an opportunity to be heard. The requirement is of statutory origin in some jurisdictions and of judicial origin in others.

In some jurisdictions, to fulfil the requirement, the notice of the hearing must bring the respondent or his attorney into court at the time when the motion is made. *Some jurisdictions require that notice of a motion be served on the respondent at least a specified number of days before the hearing on the motion.* There is a distinction between the requirement of formal service of process to secure jurisdiction over the person of a party in the commencement of an action and the right to reasonable notice of motions, pleadings, and steps taken in the proceeding after a case has begun and after jurisdiction over the parties has been acquired in the first instance. In some jurisdictions, by rule, reasonable notice only must be given to the attorneys and the parties where motion papers are filed after the action is com-

menced and appearances are entered by the attorneys for the parties.

Where notice is required, the general rule is that an order made on a motion without notice is void. Where, for example, a party seeks to vacate an order entered without notice to him, he is entitled to vacate it to the extent that it affects his interest because he has a right to be heard before the judge or court makes the order, not merely the right to show, if he can, that an order following an ex parte hearing unjustly affects him. There is authority, however, to the effect that where, from the nature of the application, the adverse party should have received a notice, an order entered on a motion without notice is merely irregular and not void for lack of jurisdiction but good until vacated or set aside.

Statutes in some jurisdictions require that supporting papers mentioned in the notice of motion be served therewith. If a paper is not served, it is not admissible in evidence, but the motion may be heard and other supporting papers properly served may be admitted in evidence.

*Id.* at § 10. (Emphasis added; footnotes omitted).

[¶ 50] Corpus Juris Secundum also defines a motion as "an application for an order made to a court or judge, directing that some act be done in favor of the applicant." 60 C.J.S. *Motions & Orders* § 1 (1969). C.J.S. cites cases restating the general rule that a motion is an application to a court. *See Lindley v. Flores,* 672 S.W.2d 612, 614 (Tex. Ct.App.1984) (stating "[a] motion is an application for an order of the court"); *Fensterheim v. Fensterheim,* 96 Misc.2d 108, 408 N.Y.S.2d 756, 758 (N.Y.Sup.Ct.1978) (stating "[a] motion is an *application* for an order and is made in an action or special proceeding which are necessary predicates for such application"); *Wolff v. Wolff,* 25 Or.App. 739, 550 P.2d 1388, 1390 (1976) (stating "[a] motion is a request for an order of the court").

II

[¶ 51] Our cases recognize the importance of both the court and the opposing party to the motion process:

A notice of motion *and motion* are sufficient if the motion and attached papers and records are sufficiently precise *to advise both* the adversary *and the court* of the question involved. *Eisenbarth v. Eisenbarth,* 91 N.W.2d 186 (N.D.1958). In *Eisenbarth, supra,* 91 N.W.2d at 188, we concluded that a notice of motion was sufficient for the court to modify child support where the notice sought "an order modifying the judgment by making the defendant pay the second mortgage and 'for such other relief as to the court may seem just and equitable.'"

*Bloom v. Fyllesvold,* 420 N.W.2d 327, 331 (N.D.1988) (emphasis added). This Court has stated it "is a well-recognized principle of law in our State that a motion for a new trial is *addressed* to the sound discretion of the trial court." *Kraft v. Kraft,* 366 N.W.2d 450, 453 (N.D.1985) (emphasis added).

[¶ 52] There was no ambiguity or conflict in our rules in effect at the relevant time. N.D.R.Civ.P. 59(c) (1997) provided:

(c) Time for Motion for New Trial. A motion for a new trial *must be made* not later than the following time after notice of entry of judgment:

1. Upon the ground of newly discovered evidence, within 6 months; and

2. Upon any other ground, within 60 days, unless the court, for good cause shown, extends the time.

(Emphasis added). N.D.R.Ct. 3.2(a) provided:

(a) Submission of Motion. *Notice must be served and filed with a motion.* The notice must indicate the time of oral argument, or that the motion will be decided on briefs unless oral argument is timely requested. *Upon serving and filing a motion,* the moving party shall serve and file a brief and other supporting papers and the adverse party shall have 10 days after service of a brief within which to serve and file an answer brief and other supporting papers. The moving party may serve and file a reply brief within 5 days after service of the answer brief. Upon the filing of briefs, or upon expiration of the time for filing, the motion is deemed submitted to the court unless counsel for any party re-

quests oral argument on the motion. If any party who has timely served and filed a brief requests oral argument, the request must be granted. A timely request for oral argument must be granted even if the movant has previously served notice indicating that the motion is to be decided on briefs. The party requesting oral argument shall secure a time for the argument and serve notice upon all other parties. The court may hear oral argument on any motion by telephonic conference. The court may require oral argument and may allow or require testimony on the motion. Requests for oral argument or the taking of testimony must be made not later than 5 days after expiration of the time for filing the answer brief.

(Emphasis added).

[¶ 53] Neither N.D.R.Civ.P. 59(i) nor (j) (1997) creates a conflict with N.D.R.Ct. 3.2:

(i) On Initiative of Court. Not later than 10 days after notice of entry of judgment the court of its own initiative may order a new trial for any reason for which it might have granted a new trial on motion of a party. After giving the parties notice and an opportunity to be heard on the matter, the court may grant a motion for a new trial, timely served, for a reason not stated in the motion. In either case, the court shall specify in the order the grounds therefor.

(j) Motion to Alter or Amend a Judgment. A motion to alter or amend the judgment must be served not later than 10 days after notice of entry of the judgment.

Read in its entirety, N.D.R.Civ.P. 59(i) relates only to orders for a new trial on the initiative of the court, and N.D.R.Civ.P. 59(j) relates to a motion to alter or amend a judgment, not an order for a new trial, and even if it did, there would be nothing inconsistent.

### III

[¶ 54] Justice Maring cites three cases as establishing that Motions "could be 'made' by 'service'" (apparently without notice to the court): *Sinett, Inc. v. Blairex Lab., Inc.,* 909 F.2d 253, 253 (7th Cir.1990); *Allen v. Ault,*

564 F.2d 1198, 1199 (5th Cir.1977); and *Keohane v. Swarco, Inc.*, 320 F.2d 429, 431–32 (6th Cir.1963). But as the cases reflect, at the time, the operative word in Federal Rule 59 was *not* "made" but "served." At the time, the federal rule, *unlike* our rule, required: "A motion for a new trial shall be *served* not later than 10 days after entry of the judgment." F.R.Civ.P. 59(b) (emphasis added).

[¶ 55] Justice Maring, at ¶ 19, quotes a footnote from the obsolete *second* edition of *Moore's Federal Practice:* " 'Although Rule 52(b) refers to a motion of a party "made," while Rule 59(b) and (d) refer to a motion "served," there is no difference in effect, *since a motion is "made" by causing it to be served.'* 5A Moore, *Federal Practice,* § 52.11[1] n. 8 (2d Ed.1979) (emphasis added)." When the second edition was current, the quoted footnote was criticized. *See, e.g., Keohane,* 320 F.2d at 431 ("Professor Moore cites no cases to support the statement in the footnote."). The third (current) edition of *Moore's Federal Practice* now states flatly the black-letter law: "Motion Is Application to Court for Order." *Moore's Federal Practice,* § 7.03(1) (3rd ed.1998).

## IV

[¶ 56] A motion is made to the court, not to the opposing party. There are usually requirements that motions be served on the opposing party. "Notice" of a motion which has not been "made" is just as meaningless as notice of entry of a non-existent judgment. The motion was not timely made. No subsequently adopted proposals of the Joint Procedure Committee to make language parallel affect any of this. I would dismiss.

[¶ 57] NEUMANN, J., concurs.