1998 ND 187

**ALMONT LUMBER & EQUIPMENT, CO., a/k/a Marshall Lumber Company, a corporation, Plaintiff and Appellant,**

v.

**Mainard B. DIRK and Sandy K. Dirk, Defendants and Appellees.**

Civil No. 980061.

Supreme Court of North Dakota.

Oct. 30, 1998.

Cynthia M. Feland, Carson, for plaintiff and appellant.

Todd D. Kranda, of Kelsch, Kelsch, Ruff & Kranda, Mandan, for defendants and appellees.

MARING, Justice.

[¶ 1] Almont Lumber and Equipment Company, also known as Marshall Lumber Company (Marshall Lumber), appeals from a judgment denying it foreclosure of a mechanic's lien recorded against the home of Mainard B. and Sandy K. Dirk. We conclude the trial court did not err in denying Marshall Lumber foreclosure of the mechanic's lien, so we affirm the judgment.

[¶ 2] Marshall Lumber sells wholesale and retail building materials. Marshall Lumber's principal place of business is in Mandan and Marshall Feland is its president and general manager. The Dirks reside in Mandan, and for the last 19 years Mainard has been a self-employed contractor in the Bismarck–Mandan area doing business as D & D Construction.

[¶ 3] In 1992, Mainard opened a credit account with Marshall Lumber to purchase building supplies and materials for his vari-

ous construction projects. No separate accounts were maintained by Marshall Lumber for the construction projects. Under the parties' agreement, Mainard would pay any balance due on the account by the tenth of the month, or be subject to a finance charge. Marshall Lumber sold Mainard materials and supplies for several years under this arrangement.

[¶ 4] In January 1995, Mainard prepared a handwritten list of materials he needed for construction of his new home. After getting a bid from a competing lumberyard, Mainard asked Feland for a price estimate. Feland and Mainard went through the list together, and Feland inserted a price by each of the building materials. Feland and Mainard also added materials for the home to the list.

[¶ 5] Mainard obtained preliminary financing approval for the home in the form of a $60,000 line of credit from First Southwest Bank (Southwest). Mainard told Feland he would purchase the building materials for his home from Marshall Lumber. Mainard asked Feland for "something to take to the bank" to get the funding in advance for the cost of the building materials for the house. Feland had his wife type the material list, which listed a total cost of $21,594.47 for the materials and supplies to construct the home.

[¶ 6] Mainard took the typed material list to Southwest. Assuming it was a bill for the materials listed, Southwest issued Mainard a bank check payable to Marshall Lumber in the amount of $21,594.47. Mainard testified the check was intended as payment in full for the building materials he wanted for the home, and was not to be applied to building materials he had purchased on credit for other unrelated projects for D & D Construction. Feland testified the $21,594.47 check was not a prepayment for the building materials for Mainard's home, but was to be applied to payment of Mainard's account balance from previous unrelated construction projects.

[¶ 7] Marshall Lumber endorsed the check by a business stamp for deposit in its bank account. The check had a preprinted lien waiver on the back:

NOTICE BEFORE ENDORSING MECHANIC'S LIEN WAIVER

IN CONSIDERATION OF PAYMENT RECEIVED AND BY THIS ENDORSEMENT, THE PAYEE WAIVES ANY AND ALL MECHANIC'S LIENS ACQUIRED BY REASON OF LABOR PERFORMED OR MATERIALS, SKILL, OR MACHINERY FURNISHED PRIOR TO AND INCLUDING THE 26th DAY OF June, 1995 TO THE PREMISES SITUATED AT [the legal description for the Dirks' new home].

Marshall Lumber applied the $21,594.47 check to Mainard's existing account balance of $8,278 on other unrelated construction projects, resulting in an overpayment of $13,-316.47 for that account. The materials for the home were delivered after June 26, 1995.

[¶ 8] Mainard continued buying building materials on credit from Marshall Lumber for other unrelated construction projects. By December 1995, the outstanding balance due on Mainard's account exceeded $20,000, and Marshall Lumber refused to extend him further credit. Marshall Lumber then gave Mainard written notice of its intent to file a mechanic's lien against his home, and filed the lien in January 1996.

[¶ 9] Marshall Lumber then brought a collection action against the Dirks to recover the balance owed on its open account and to foreclose the mechanic's lien. After a bench trial, the trial court found the Dirks owed Marshall Lumber $20,758 on the open account as of January 1, 1996. However, the court terminated the mechanic's lien, concluding the lien was not properly perfected because the lien waiver on the back of the $21,594.47 check was valid and, by endorsing the check, Marshall Lumber "had full knowledge that the lien waiver was applicable to the building project related to the price list for the home of the [Dirks]." Judgment was entered in favor of Marshall Lumber for $20,758, plus interest from January 1, 1996, costs and disbursements. Marshall Lumber appealed, claiming the court erred in terminating the mechanic's lien.

[¶ 10] Marshall Lumber asserts the trial court erred in denying foreclosure of its mechanic's lien because the check endorsement stamp was not a "signature" for pur-

poses of a knowing and voluntary waiver of the lien. Marshall Lumber also asserts the court erred because a lien waiver cannot be extended to materials delivered after the date of the time period covered by the waiver, and here, all materials were delivered after June 26, 1995. We need not decide the questions posed by Marshall Lumber because, even if the trial court erred, we will not set aside a correct result merely because the trial court assigned an incorrect reason if the result is the same under the correct law and reasoning. *See Hanneman v. Continental Western Ins. Co.*, 1998 ND 46, ¶ 25, 575 N.W.2d 445. Here, the trial court made other dispositive findings that compel denying Marshall Lumber's foreclosure of the mechanic's lien.

■ [¶ 11] Section 35–27–02, N.D.C.C., provides:

> Any person who improves real estate by the contribution of labor, skill, or materials, whether under contract with the owner of such real estate or under contract with any agent, trustee, contractor, or subcontractor of the owner, has a lien upon the improvement and upon the land on which it is situated or to which it may be removed for the price or value of such contribution. Provided, however, that the amount of the lien is only for the difference between the price paid by the owner or agent and the price or value of the contribution. *If the owner or agent has paid the full price or value of the contribution, no lien is allowed.*

(Emphasis added). Thus, if the Dirks prepaid Marshall Lumber the full value of the materials purchased for construction of their home, no mechanic's lien is allowed. *See Kirkland v. Oberquell*, 405 N.W.2d 21, 23 (N.D.1987).

[¶ 12] The trial court concluded Marshall Lumber's "efforts to perfect a Mechanic's Lien in this matter failed." The trial court, in finding of fact "VI", said:

> In June of 1995, there was a balance owing on the account in excess of $8,000. On or about that time, ... Mainard Dirk brought a house plan to Marshall Feland who wrote up a price list. The list was taken by ... Mainard Dirk to First South-

west Bank. A draft was made payable to [Marshall Lumber] in the exact amount of the materials price listing, that amount being $21,594.47.

The court further said in finding of fact "IX":

> [The Dirks] allege that the First Southwest Bank draft was being advanced in payment for the materials that would go into [their] home.

Finally, in conclusion of law "II", the court said:

> By endorsing and processing the First Southwest Bank draft dated June 26, 1995, [Marshall Lumber] had full knowledge that the lien waiver was applicable to the building project related to the price list for the home of the [Dirks].

■ [¶ 13] The trial court made no express finding whether the parties agreed the $21,594.47 check was in full payment of the materials and supplies for the Dirks' home. Although we ordinarily remand for clarification of missing or conclusory findings of fact, we will not do so when, through inference or deduction, we can discern the rationale for the result reached by the trial court. *See Wheeler v. Wheeler*, 548 N.W.2d 27, 30 (N.D. 1996). We may rely on implied findings of fact when the record enables us to understand the factual determinations made by the trial court and the basis for its conclusions of law and judgment. *See Loll v. Loll*, 1997 ND 51, ¶ 9, 561 N.W.2d 625; *First American Bank West v. Berdahl*, 556 N.W.2d 63, 65 (N.D.1996). When findings VI and IX, and conclusion II, are read together, they disclose an implicit finding the parties had agreed the $21,594.47 check was a prepayment in full for the materials for the Dirks' home.

[¶ 14] The court recognized the bank draft was made payable to Marshall Lumber in the "exact amount of the materials price listing" and noted the Dirks' argument the draft was advanced in payment of the materials that would be used for the home. The court concluded Marshall Lumber had "full knowledge" the lien waiver "was applicable to the building project related to the price list for the home of the [Dirks]" when it endorsed the bank draft. If Marshall Lumber had full

knowledge the lien waiver was applicable to the Dirks' home building project by endorsing the draft, it certainly also had full knowledge the $21,594.47 draft was also applicable to the Dirks' home building project.

[¶ 15] A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support it, or if, upon review of the entire evidence, we are left with a definite and firm conviction a mistake has been made. *Wachter Development, L.L.C. v. Gomke*, 1998 ND 119, ¶ 9, 579 N.W.2d 209. Here, the trial court's implicit finding of an agreement to apply the check proceeds exclusively to the Dirks' home building project is not clearly erroneous. It is amply supported not only by the testimony of Mainard and a Southwest employee, but also by the only logical inference to be drawn from the circumstances of the parties' transaction. Because the $21,594.47 check was prepayment in full for the materials and supplies for the Dirks' new home, Marshall Lumber was not entitled to a mechanic's lien, and the trial court did not err in denying Marshall Lumber foreclosure of the lien.

[¶ 16] The judgment is affirmed.

[¶ 17] VANDE WALLE, C.J., and NEUMANN and SANDSTROM, JJ., concur.

[¶ 18] MESCHKE, J., a member of the Court when this case was heard, retired effective October 1, 1998, and did not participate in this decision.