2015 ND 77

SERVICE OIL, INC. and Steven Dirk Lenthe, Plaintiffs

Service Oil, Inc., Appellant and Cross–Appellee

v.

Rory D. GJESTVANG, Brad A. Bjerke, LaRayne K. Haakenson, Don Stetson, Defendants and Appellees.

and

Rodney Demers and Les Laidlaw, Defendants.

Rory D. Gjestvang, Brad A. Bjerke and LaRayne Haakenson, Defendants, Third–Party Plaintiffs, Appellees, and Cross–Appellants

v.

Steven Dirk Lenthe, Third–Party Defendant.

No. 20130366.

Supreme Court of North Dakota.

March 30, 2015.

Joseph A. Turman, Fargo, N.D., for plaintiffs, appellant and cross-appellee.

Leslie B. Oliver (argued) and Amanda E. Peterson (appeared), Bismarck, N.D., for defendants and appellees Rory D. Gjestvang, Brad A. Bjerke and LaRayne K. Haakenson.

David A. Tschider, Bismarck, N.D. for defendant and appellee Don Stetson.

CROTHERS, Justice.

[¶1] Service Oil, Inc., appeals and Rory Gjestvang, Brad Bjerke and La-Rayne Haakenson cross-appeal from a judgment entered after a bench trial dismissing the parties' claims involving their business relationship. The district court's underlying findings of fact are not clearly erroneous and the court did not err in

dismissing all the parties' claims. We affirm.

I

[¶ 2] Steven Dirk Lenthe was the sole owner of Service Oil, which operated convenience stores in North Dakota, and defendants Gjestvang, Bjerke, Haakenson and Don Stetson were employees of Service Oil. Gjestvang started working for Service Oil in 1985, serving as operations manager from 1992 until April 2010. Bjerke was supervisor of eastern North Dakota stores from 1997 until 2010. Haakenson was district supervisor and manager of the Bismarck travel center from 1993 until May 2010.

[¶ 3] This lawsuit stems from a transaction involving the purchase of repossessed wholesale inventory, initially located in a warehouse in Bismarck, and an agreement for the sale of that inventory through Service Oil. In March 2007, American Bank Center in Bismarck contacted Haakenson about purchasing a large volume of repossessed inventory. Gjestvang and Haakenson discussed the matter with Lenthe, and he agreed to provide $700,000 to purchase the inventory. In April 2007, Lenthe, Gjestvang, Haakenson and Bjerke executed a Warehouse Business Agreement to sell the inventory. The agreement described the parties' compensation:

"A Profit and Loss Statement will be carefully used to track all true expenses throughout the period of operation. Brad Bjerke, LaRayne Haakenson, and Rory Gjestvang will handle all operations of the warehouse in conjunction with current duties. Stamart and Northtown Grill will be top priority with the Warehouse being worked around that schedule.

"Compensation will be $30,000 each for Brad Bjerke, LaRayne Haakenson and Rory Gjestvang, with 1/2 paid at the end

of August if the proper progress is made in deleting warehouse stock. The remaining 1/2 will be paid after year end. "The previous compensation will be included in the P & L Statement. The final year end profit as defined in the P & L Statement will be divided accordingly:

50% to owner Dirk Lenthe

25% to Rory Gjestvang

12.5% to Brad Bjerke

12.5% to LaRayne Haakenson

"This arrangement will continue into the next year if necessary with the same agreement in place."

[¶ 4] At about the same time of the agreement, Service Oil finalized the purchase agreement and lease with American Bank Center, resulting in Service Oil purchasing the inventory in Bismarck for its newly established "Merchandise Depot" division for $700,000. In May 2009 Service Oil moved the warehouse operation and remaining inventory to Fargo.

[¶ 5] In early 2009, Gjestvang created a separate entity called "Prairie Distributing" and, on May 1, 2009, rented a building for its warehouse business. In May 2009, defendants Les Laidlaw and Rodney Demers started an entity under the trade name "Laidlaw Sales." Laidlaw and Demers also were sales representatives of Prairie Distributing. Gjestvang purchased merchandise for Prairie Distributing and used the services of Demers and Laidlaw to sell products to Service Oil, which was done without informing Service Oil.

[¶ 6] In 2010, Service Oil sued Gjestvang, Bjerke, Haakenson, Stetson, Demers and Laidlaw. Service Oil alleged the defendants conspired to deceive Service Oil and sought a refund of commission overpayments from Gjestvang, Bjerke and Haakenson. Service Oil also asserted a claim against Gjestvang for conversion of

certain brand-name gloves, asserting the gloves were Service Oil's property and were retrieved from Prairie Distributing's garbage.

[¶ 7] The defendants denied Service Oil's claims and asserted a counterclaim, as well as a third-party complaint against Lenthe. The defendants alleged Service Oil breached its duty of loyalty under a claimed partnership or joint venture between themselves and Service Oil. Defendants Gjestvang, Bjerke and Haakenson asserted they were entitled to additional payments under the Warehouse Business Agreement and sought to pierce Service Oil's corporate veil to hold Lenthe personally liable for claimed damages. Gjestvang also sued Service Oil and Lenthe for interference with business relationship or expectancy.

[¶ 8] After a bench trial the district court dismissed all the parties' claims. The court held that the sole purpose of the Warehouse Business Agreement was to "delet[e] the Merchandise Depot original stock" and that the Agreement did not create either a joint venture or a partnership between Service Oil, Lenthe, Gjestvang, Haakenson or Bjerke. The court further found it was impossible to determine whether Service Oil incurred any damages from alleged overpayment of commissions because no accurate inventories were taken of the Merchandise Depot inventory when it was first acquired, no accurate inventories exist for when Merchandise Depot was moved from Bismarck to Fargo and no accurate records in the interim differentiate between the original inventory and new inventory.

[¶ 9] The district court found Gjestvang, Haakenson and Bjerke had no fiduciary duty to disclose that Prairie Distributing was selling merchandise to Service Oil through Laidlaw Sales because Prairie Distributing was not in competition with Service Oil. The court determined Service Oil's claims for fraud or deceit and for conspiracy to defraud also failed because the Prairie Distributing merchandise sold to Service Oil through Laidlaw Sales resulted in greater profits to Service Oil than the products Service Oil sold from Merchandise Depot or other third-party vendors. The district court also rejected Service Oil's claim for conversion against Gjestvang, finding he had not converted any property belonging to Service Oil.

[¶ 10] The district court dismissed Gjestvang's claim for interference of business relations, determining Gjestvang failed to prove he incurred damages from Service Oil's alleged interference with his business relations.

II

[¶ 11] Service Oil contends the district court clearly erred in making certain factual findings. Service Oil argues the court clearly erred in determining that the lack of an inventory prevented calculation of commissions due under the Warehouse Business Agreement, the court clearly erred in determining the only gloves recovered from the garbage were purchased by Gjestvang and the court clearly erred in determining Service Oil did not suffer damages by reason of the operation of a competing business by the defendants while they were employees of Service Oil.

[¶ 12] This Court's standard of review on appeal from a bench trial is well-established:

"In an appeal from a bench trial, the trial court's findings of fact are reviewed under the clearly erroneous standard of N.D.R.Civ.P. 52(a) and its conclusions of law are fully reviewable. *Fargo Foods, Inc., v. Bernabucci*, 1999 ND 120, ¶ 10, 596 N.W.2d 38. A finding of fact is clearly erroneous if it is induced by an

erroneous view of the law, if there is no evidence to support it, or if, after reviewing all the evidence, we are left with a definite and firm conviction a mistake has been made. *Moen v. Thomas,* 2001 ND 95, ¶ 19, 627 N.W.2d 146. 'In a bench trial, the trial court is "the determiner of credibility issues and we do not second-guess the trial court on its credibility determinations." ' *Id.* at ¶ 20." *Brash v. Gulleson,* 2013 ND 156, ¶ 7, 835 N.W.2d 798 (quoting *Fladeland v. Gudbranson,* 2004 ND 118, ¶ 7, 681 N.W.2d 431). A trial court's findings are "presumptively correct." *Tweeten v. Miller,* 477 N.W.2d 822, 824 (N.D.1991).

[¶ 13] In applying the clearly erroneous standard of review, we will not substitute our judgment for the trial court's judgment. *Erickson v. Olsen,* 2014 ND 66, ¶ 19, 844 N.W.2d 585. "A trial court's choice between two permissible views of the weight of the evidence is not clearly erroneous, and simply because we may have viewed the evidence differently does not entitle us to reverse the trial court." *Id.* (quoting *RRMC Constr., Inc. v. Barth,* 2010 ND 60, ¶ 7, 780 N.W.2d 656). A trial court's findings are adequate if the record enables us to understand the court's factual determinations and the basis for its conclusions of law and judgment. *See Almont Lumber & Equip., Co. v. Dirk,* 1998 ND 187, ¶ 13, 585 N.W.2d 798; *First Am. Bank W. v. Berdahl,* 556 N.W.2d 63, 65 (N.D.1996).

A

[¶ 14] Service Oil argues the district court clearly erred in finding the lack of inventories prevented calculation of commissions due under the Warehouse Business Agreement.

[¶ 15] Generally, while contract interpretation presents a question of law on appeal, whether a party breached a contract is a finding of fact under N.D.R.Civ.P. 52(a). *WFND, LLC v. Fargo Marc, LLC,* 2007 ND 67, ¶ 13, 730 N.W.2d 841. A breach of contract is "the nonperformance of a contractual duty when it is due." *WFND,* at ¶ 13 (citing Restatement (Second) of Contracts § 235(2) (1981)). "The elements of a prima facie case for breach of contract are: (1) the existence of a contract; (2) breach of the contract; *and (3) damages which flow from the breach.*" *WFND,* at ¶ 13 (emphasis added). A party asserting a claim for breach of contract has the burden to prove these elements. *Id.*

[¶ 16] Section 32–03–09, N.D.C.C., provides, "[n]o damages can be recovered for a breach of contract if they are not clearly ascertainable in both their nature and origin." Although damages must be "clearly ascertainable," "evidentiary imprecision" or mere uncertainty in the exact amount of damages will not preclude recovery when obvious damages were suffered or reasonably certain substantial damages have resulted. *See Langer v. Bartholomay,* 2008 ND 40, ¶ 27, 745 N.W.2d 649; *Farmers Ins. Exch. v. Schirado,* 2006 ND 141, ¶ 17, 717 N.W.2d 576. However, uncertainty as to the fact of damages, rather than the amount, prevents recovery of damages. *See SolarBee, Inc. v. Walker,* 2013 ND 110, ¶ 26, 833 N.W.2d 422; *Schirado,* at ¶ 17. "This Court has therefore concluded that, in cases where the amount of damages may be hard to prove, the amount of damages is to be left to the sound discretion of the finder of facts." *Martin v. Trinity Hosp.,* 2008 ND 176, ¶ 30, 755 N.W.2d 900 (citation and quotation marks omitted).

[¶ 17] Here, the district court construed the Warehouse Business Agreement and found no partnership or joint venture between the parties was created.

The court found the contract was "simply an agreement for the present employees of Service Oil to assist in clearing out the warehouse in Bismarck, and receiving compensation for that work." The court found the agreement's purpose was "to delete the warehouse stock in the leased warehouse in Bismarck," and that purpose was terminated in May 2009 when Service Oil moved the warehouse to Fargo. The court found all required payments to defendants Gjestvang, Haakenson and Bjerke under the agreement were made in July 2009, and no further payments were due to the defendants. The court further found Service Oil's claim for compensation for overpayment of commissions failed for lack of proof because it was "impossible" to determine to what extent, if any, the defendants were compensated for new inventory. Based on the evidence, the court found there was no accurate inventory when the merchandise was acquired in Bismarck, there was no reliable ending inventory when the warehouse was moved to Fargo in 2009 and the Merchandise Depot profit and loss statements maintained by Service Oil did not distinguish between old and new inventory. Due to this lack of accurate inventories of the merchandise, the court found "the fact of any damage to [Service Oil] is uncertain."

[¶ 18] Service Oil argues the district court clearly erred in finding a damages calculation "impossible" because Service Oil's expert witness, an accountant, testified that his calculations of overpayment were made using generally accepted accounting principles and because the evidence "clearly established" Gjestvang's method to calculate commissions and his calculations were based on all sales rather than just original "old" inventory. While Service Oil acknowledges the defendants' expert, also a certified public accountant, disagreed with its expert's calculations, Service Oil asserts defendants' expert's re-

sults were different because he determined the agreement's termination constituted a sale of the remaining original inventory that resulted in an obligation by Service Oil to pay a commission on the remaining inventory. Service Oil argues that, in considering the accounting experts' competing testimony at trial, this Court should decide it is "clear" the district court's determination that damages were uncertain was mistaken and should reverse the finding and remand for further proceedings. Service Oil further asserts it is "undisputed" Service Oil overpaid commissions to Gjestvang, Haakenson, and Bjerke.

[¶ 19] Defendants Gjestvang, Bjerke and Haakenson respond that the district court did not err in finding Service Oil did not prove defendants were overpaid commissions under the Warehouse Business Agreement. Defendants contend the court properly found no reliable inventories existed, which precluded a calculation of damages. They also argue Service Oil failed to establish no evidence existed to support the court's finding or that the facts showed a mistake was definitely made. The defendants assert the question of proper payment under the agreement amounts to a battle of experts at trial, and they in fact were entitled to additional compensation under that agreement.

[¶ 20] This is not a case of mere evidentiary imprecision or uncertainty in the exact amount of damages. Rather than finding the "amount of damages" was uncertain, the district court found the "fact of damages" was uncertain based on the lack of accurate and reliable merchandise inventories showing damages were sustained. The parties presented conflicting evidence about the existence of damages. The trier of fact decides the expert witnesses' credibility and the weight to be accorded their testimony. *Barnes v. Mit-*

*zel Builders, Inc.*, 526 N.W.2d 244, 246 (N.D.1995). A trial court is not required to accept an expert witness's undisputed testimony. *WFND*, 2007 ND 67, ¶ 30, 730 N.W.2d 841.

[¶ 21] On this record, the district court's finding that the lack of inventories precluded the court from deciding Service Oil overpaid commissions to defendants under the Warehouse Business Agreement was not induced by an erroneous view of the law and was supported by evidence. We are not left with a definite and firm conviction a mistake has been made and conclude the court's finding is not clearly erroneous.

B

[¶ 22] Service Oil argues the district court clearly erred in dismissing its conversion claim against Gjestvang after finding the only gloves recovered from a dumpster were purchased by him.

[¶ 23] A claim for conversion requires proof of "a tortious detention or destruction of personal property, or a wrongful exercise of dominion or control over the property inconsistent with or in defiance of the rights of the owner." *Doeden v. Stubstad*, 2008 ND 165, ¶ 9, 755 N.W.2d 859 (quoting *Buri v. Ramsey*, 2005 ND 65, ¶ 14, 693 N.W.2d 619); *see Ritter, Laber and Assocs., Inc. v. Koch Oil, Inc.*, 2004 ND 117, ¶ 11, 680 N.W.2d 634; *Paxton v. Wiebe*, 1998 ND 169, ¶ 28, 584 N.W.2d 72. "The gist of a conversion is not in acquiring the complainant's property, but in wrongfully depriving him of it, whether temporarily or permanently, and it is of little relevance that the converter received no benefit from such deprivation." *Paxton*, at ¶ 28 (citations and quotation marks omitted). Conversion does not require bad intent on the converter's part; rather only an intent to control or interfere with the owner's rights to use to an actionable degree. *See Buri*, at ¶ 14; *Paxton*, at ¶ 28. Whether a conversion has been committed is a finding of fact, which will not be overturned on appeal unless it is clearly erroneous. *Paxton*, at ¶ 29.

[¶ 24] Here, the district court rejected Service Oil's claim that Gjestvang converted gloves owned by Service Oil. The court instead found Gjestvang had Haakenson purchase a large number of gloves from Service Oil, Haakenson paid for the purchase on her credit card in the amount of $768.50, and Gjestvang repaid Haakenson by writing her a check for $770. The court found the only gloves Gjestvang threw in the garbage were gloves he owned. The court concluded Gjestvang did not convert property belonging to Service Oil.

[¶ 25] Service Oil argues the district court plainly was "mistaken" in finding Gjestvang owned the gloves he threw in the garbage. Service Oil asserts the evidence "clearly show[ed]" that the gloves were "recovered" from the garbage about 10 days after the complaint was served, that Gjestvang admitted he put the gloves in the garbage, that Gjestvang admitted he never purchased gloves from Fairfield and that the receipts Gjestvang produced as proof of purchase actually were for the purchase of a large tool chest he ordered while a Service Oil employee. Service Oil asserts the value of the gloves "recovered" from the garbage totaled over $6,700 based on prices shown in Gjestvang's catalog and Service Oil's private investigator testified there were approximately 1,000 additional pairs of gloves in the garbage that he did not recover. The defendants contend, however, the court did not clearly err when it determined all of the gloves found in the trash were owned by Gjestvang.

[¶ 26] In essence, the district court found the gloves recovered from the garbage were lawfully purchased by Gjestvang, thereby rejecting Service Oil's assertions to the contrary. We agree with the defendants that this issue comes down to the credibility and trustworthiness of Service Oil's private investigator, which was challenged at trial. Gjestvang denied taking gloves or any other items from Service Oil without paying for them. He testified he purchased the gloves from the store managed by Haakenson, which were intended to be sample inventory and photographed for the Prairie Distributing catalog. He testified he asked Haakenson to buy the gloves and he reimbursed her. Gjestvang testified he decided to sell a different line of gloves and the other gloves were discarded as a standard practice in the industry.

[¶ 27] Evidence supports the district court's finding that Gjestvang owned the gloves thrown into a garbage, and we are not left with a definite and firm conviction the district court made a mistake. The court's factual findings on the conversion issue are not clearly erroneous.

## C

[¶ 28] Service Oil argues the district court clearly erred in determining Service Oil did not suffer damages by the defendants' competing business while they were Service Oil employees.

[¶ 29] Service Oil generally argues, without any specific analysis of its claims, that Gjestvang, Haakenson, Bjerke and Stetson had Lenthe's confidence and used their positions to promote Prairie Distributing's business over Service Oil's business. Service Oil contends the gross profits that Prairie Distributing made on sales to Service Oil should, therefore, accrue to Service Oil. Service Oil asserts that Laidlaw and Demers were co-conspirators with Gjestvang and Bjerke by participating in defrauding and deceiving Service Oil through billing and by accepting commissions for sales by Gjestvang and Bjerke to Service Oil and that its damages include the amount of commissions paid to Laidlaw and Demers. Service Oil further contends all the defendants are jointly and severally liable for damages.

[¶ 30] Service Oil argues Gjestvang, Haakenson and Bjerke's actions also constitute "fraud" as they were parties to the Warehouse Business Agreement. Service Oil contends it is entitled to recover from the defendants bonus payments, wages and commissions paid to Gjestvang, Haakenson and Bjerke during the time they were conspiring against, and Prairie Distributing was competing with, Service Oil. Service Oil asserts it is "clear" Prairie Distributing competed with Service Oil for seven months of 2009 and all of 2010 and its damages include Merchandise Depot's lost profits and business through sales of Prairie Distributing merchandise to Service Oil's stores.

[¶ 31] The defendants respond that Service Oil has not presented sufficient argument and reasoning on appeal to proceed on this issue because it failed to clearly identify the findings it is challenging and to set forth an adequately articulated and reasoned argument supporting that challenge. *See Holden v. Holden,* 2007 ND 29, ¶ 7, 728 N.W.2d 312; *Riemers v. O'Halloran,* 2004 ND 79, ¶ 6, 678 N.W.2d 547. The defendants further argue, however, that the district court did not err in concluding Service Oil did not suffer any damages through the operation of Prairie Distributing so as to support its claims against the defendants.

[¶ 32] Here, the district court found Service Oil did not ultimately suffer damages from the defendants' operation of Prairie Distributing. The court found

Prairie Distributing and Service Oil were not in competition and defendants had no duty to disclose Prairie Distributing was selling merchandise to Service Oil through Laidlaw sales. The court, nonetheless, held that Service Oil's claims for fraud or deceit and conspiracy to defraud failed based on its finding that the merchandise Prairie Distributing sold through Laidlaw Sales to Service Oil resulted in greater profits to Service Oil than the products sold from Merchandise Depot or other third-party vendors. Although Service Oil broadly asserts its damages consist of Prairie Distributing's gross profits on sales to Service Oil, in addition to commissions, bonus payments and wages paid to the defendants, Service Oil does not differentiate the damages attributable to each of its various claims; thus, nor do we.

[¶ 33] Under N.D.C.C. § 9–10–03, "[o]ne who willfully deceives another with intent to induce that person to alter that person's position to that person's injury or risk is liable for any damage which that person thereby suffers," and a "deceit" under this section means:

"1. The suggestion as a fact of that which is not true by one who does not believe it to be true;

2. The assertion as a fact of that which is not true by one who has no reasonable ground for believing it to be true;

3. *The suppression of a fact by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact;* or

4. A promise made without any intention of performing."

N.D.C.C. § 9–10–02 (emphasis added).

[¶ 34] North Dakota law provides that "[a] fraud or deceit which has caused no injury cannot be made the basis for an action, because courts do not sit for the purpose of enforcing moral obligations or correcting unconscientious acts which are followed by no loss or injury." *Northstar Founders, LLC v. Hayden Capital USA, LLC,* 2014 ND 200, ¶ 28, 855 N.W.2d 614 (citations and quotation marks omitted); *see also Lang v. Schafer,* 2000 ND 2, ¶ 8, 603 N.W.2d 904; *Sonnesyn v. Akin,* 14 N.D. 248, 256, 104 N.W. 1026, 1028 (1905). Proof of "the misrepresentation or nondisclosure" proximately caused "actual damages" is an essential element of such a tort action. *See Northstar Founders,* at ¶ 28; *WFND,* 2007 ND 67, ¶ 25, 730 N.W.2d 841. "Fraud and deceit must be proved by clear and convincing evidence," and present questions of fact, not set aside unless clearly erroneous. *WFND,* at ¶ 25.

[¶ 35] Additionally, this Court defined a "civil conspiracy" as:

"a combination of two or more persons acting in concert to commit an unlawful act or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another and an overt act that results in damages.

"Although criminal and civil conspiracy have similar elements, the distinguishing factor between the two is that *damages are the essence of a civil conspiracy* and the agreement is the essence of a criminal conspiracy. There can be no damages if there is not an unlawful act."

*Burris Carpet Plus, Inc. v. Burris,* 2010 ND 118, ¶ 42, 785 N.W.2d 164 (citations omitted). Thus, a common element running through all claims is that without proof of actual damages, Service Oil's claims for deceit and a civil conspiracy to deceive or defraud must fail.

[¶ 36] Rather than finding Service Oil suffered lost business or profits, the district court found Prairie Distributing prod-

ucts sold through Laidlaw Sales were more profitable for Service Oil, resulting in greater profits to Service Oil, than products Service Oil acquired from either Merchandise Depot or third-party vendors. By implication the court concluded Service Oil did not prove damages caused by alleged deceitful conduct and that its deceit claims against Gjestvang, Haakenson and Bjerke and its claims for conspiracy to deceive or defraud must therefore fail.

[¶ 37] Service Oil claimed it would have made a greater profit if it sold products acquired through Merchandise Depot instead of products acquired from Prairie Distributing through Laidlaw Sales. The evidence Service Oil offered to support this claim included an analysis created by its bookkeeper. The defendants' expert witness identified errors in the bookkeeper's calculations and questioned the credibility of the analysis. The defendants' expert used Service Oil's financial statements and purchase analysis to identify the profit margins on the general merchandise products sold in the stores, establishing Service Oil made more profit selling products from Laidlaw Sales than it did selling products from Merchandise Depot or third-party vendors.

[¶ 38] Based on this record, even if Prairie Distributing's sales to Service Oil through Laidlaw Sales should have been disclosed, the district court's finding that Service Oil did not suffer damages from the defendants' operation of Prairie Distributing was not induced by an erroneous view of the law, evidence supports it, and we are not left with a definite and firm conviction a mistake has been made. The court's finding is not clearly erroneous, and the court did not err in dismissing Service Oil's deceit and conspiracy claims.

VI

[¶ 39] In the cross-appeal, the defendants argue the district court erred in finding Gjestvang's claim for interference with business relations failed "as a matter of law."

[¶ 40] In *Trade 'N Post, L.L.C. v. World Duty Free Americas, Inc.*, this Court held that to prevail on a tort claim for unlawful interference with business, a plaintiff must prove:

"(1) the existence of a valid business relationship or expectancy; (2) knowledge by the interferer of the relationship or expectancy; (3) an independently tortious or otherwise unlawful act of interference by the interferer; (4) proof that the interference caused the harm sustained; and (5) actual damages to the party whose relationship or expectancy was disrupted."

2001 ND 116, ¶ 36, 628 N.W.2d 707. We further held that "to recover in tort for unlawful interference with business for actions by a business competitor, the plaintiff must establish that the interfering conduct was independently tortious or otherwise in violation of state law." *Id.* at ¶ 43; *see also Schmitt v. MeritCare Health Sys.*, 2013 ND 136, ¶ 23, 834 N.W.2d 627 ("otherwise unlawful act of interference" means "otherwise in violation of state law").

[¶ 41] Here, the district court found Gjestvang's claim for interference with business relations failed because he did not prove he incurred any damages from any alleged interference of business relations by Service Oil. In support of its finding, the court found:

"Gjestvang has failed to prove by the preponderance of the evidence that any of the actions of Lenthe caused him any harm. None of Gjestvang's proposed vendors came in to testify that they refused to do business with Gjestvang because of anything Service Oil or Lenthe may have told them. Gjestvang's uncorroborated testimony re-

garding his belief is simply not sufficient evidence to prove his claim of unlawful interference with business."

[¶ 42] The defendants contend the gravamen of the interference claim is that false statements by Lenthe and Service Oil damaged his reputation and resulted in loss of business opportunities and sales for Gjestvang's wholesale distribution warehouse, Prairie Distributing. Relying on *Schirado*, 2006 ND 141, ¶ 12, 717 N.W.2d 576; and *Forster v. W. Dakota Veterinary Clinic*, 2004 ND 207, ¶ 20, 689 N.W.2d 366, *rev'd on other grounds by Minto Grain, LLC v. Tibert*, 2009 ND 213, ¶ 9, 776 N.W.2d 549, the defendants argue the district court required "too high of an evidentiary standard" to establish the claim.

[¶ 43] While the district court found Gjestvang's "uncorroborated testimony regarding his belief was not sufficient evidence," the defendants assert "sufficient" circumstantial evidence on that claim was presented at trial. They assert Gjestvang's interference claims were supported by testimony and multiple exhibits. They claim undisputed evidence establishes Lenthe and Service Oil employees and agents contacted Prairie Distributing vendors and customers and that Lenthe claimed Gjestvang had stolen Service Oil property. The defendants assert Lenthe and Service Oil did not dispute Gjestvang's vendors and customers were contacted and questioned about "bogus invoices showing the sale of stolen inventory" and Gjestvang's pleas to limit Service Oil's discovery requests to prevent the disclosure of his customer and vendor identities were disregarded. They assert both Gjestvang's and Haakenson's testimony "indicate" that after being contacted by Service Oil agents or Lenthe, many of their customers stopped purchasing from them during this lawsuit. They argue the "natural conse-

quence" has been lost profits and lost opportunities.

[¶ 44] In *Schirado*, we said, "Any issue may be proven by circumstantial evidence or by a combination of direct and circumstantial evidence." 2006 ND 141, ¶ 12, 717 N.W.2d 576 (holding in a summary judgment, a district court erred in applying "too high of an evidentiary standard" by concluding causation could only be proven by "direct testimony"); *Forster*, 2004 ND 207, ¶ 20, 689 N.W.2d 366 (holding "[d]irect testimony of the recipient's understanding of the defamatory nature of a libel [was] not required if other evidence is sufficient to permit an inference of that understanding"); *see also Lovas v. St. Paul Ins. Cos.*, 240 N.W.2d 53, 61 (N.D. 1976). In *Schirado*, at ¶ 12, we explained that "[t]he determination whether certain conduct caused injury depends on the facts and circumstances of each case and generally is a question of fact for the trier of fact." While circumstantial evidence alone may be sufficient to prove an element of a claim, it does not follow that causation or damages were conclusively proven merely because circumstantial evidence was presented at trial.

[¶ 45] Here, the district court found Gjestvang's "uncorroborated beliefs" were not sufficient to prove damages from interference by Lenthe and Service Oil. This issue properly presents a fact question for the trier of fact. We conclude the district court did not err in finding Gjestvang failed to prove interference with business relations.

## VII

[¶ 46] The defendants argue the district court erred in denying their request for attorney fees under N.D.C.C. § 28–26–01(2), N.D.C.C. § 28–26–31, and N.D.R.App.P. 38. They contend Service Oil's claims are frivolous and they were

entitled to attorney fees. They also request attorney fees for a frivolous appeal under N.D.R.App.P. 38, asserting Service Oil's appellate brief is a "convoluted and confusing jumble of unrelated factual allegations and legal theories."

[¶ 47] Under North Dakota law, parties bear their own attorney fees, absent statutory or contractual authority to the contrary. *Strand v. Cass Cnty.*, 2008 ND 149, ¶ 9, 753 N.W.2d 872. Under N.D.C.C. § 28–26–01(2), the district court has discretion to decide whether a claim is frivolous and to determine the amount and reasonableness of an award of attorney fees. But when the court decides a claim is frivolous, it must award attorney fees. *Id.* at ¶¶ 12–13.

[¶ 48] "A claim for relief is frivolous under N.D.C.C. § 28–26–01(2) only if there is such a complete absence of actual facts or law a reasonable person could not have expected a court would render a judgment in that person's favor," which this Court reviews for an abuse of discretion. *Estate of Dion*, 2001 ND 53, ¶ 46, 623 N.W.2d 720.

[¶ 49] Under N.D.C.C. § 28–26–31, an award of attorney fees is entirely within the district court's discretion. A court is authorized to award attorney fees for "[a]llegations and denials in any pleadings in court, made without reasonable cause and not in good faith, and found to be untrue." *Strand*, 2008 ND 149, at ¶ 14, 753 N.W.2d 872 (citation and quotation marks omitted). Additionally, "[u]nder N.D.R.App.P. 38, this Court may award just damages and single or double costs, including reasonable attorney's fees, if an appeal is frivolous." *Estate of Pedro v. Scheeler*, 2014 ND 237, ¶ 17, 856 N.W.2d 775 (citation and quotation marks omitted). "An appeal is frivolous if it is flagrantly groundless, devoid of merit, or demonstrates persistence in the course of litigation which evidences bad faith." *Id.* (citation and quotation marks omitted).

[¶ 50] Here, the district court held a seven-day trial involving numerous witnesses and exhibits, made significant findings of fact on contested factual issues, and analyzed Service Oil's claims in the context of a failure of proof rather than finding Service Oil's claims were frivolous. Based on our review of the record, Service Oil's claims were not frivolous. The district court did not abuse its discretion in denying the defendants' request for attorney fees after trial. Further, while Service Oil's brief on appeal is not a model of clarity, we cannot say Service Oil's appeal is groundless, and we deny the defendants' request for attorney fees on appeal.

## VIII

[¶ 51] We considered the parties' remaining arguments and conclude they are either unnecessary to our decision or without merit. The district court judgment is affirmed.

[¶ 52] GERALD W. VANDE WALLE, C.J., DALE V. SANDSTROM, J., MARY MUEHLEN MARING, S.J. and WILLIAM A. NEUMANN, S.J., concur.

[¶ 53] The Honorable MARY MUEHLEN MARING, S.J., and the Honorable WILLIAM A. NEUMANN, S.J., sitting in place of KAPSNER, J. and McEVERS, J., disqualified.