2017 ND 217

**Loren Zundel and Richard ZUNDEL, Plaintiffs, Appellees, and Cross-Appellants**

**v.**

**Stephen ZUNDEL, Defendant, Appellant, and Cross-Appellee**

**No. 20170003**

Supreme Court of North Dakota.

Filed 9/1/2017

Benjamin J. Hasbrouck, Fargo, N.D., for plaintiffs, appellees, and cross-appellants.

Fallon M. Kelly, Lisbon, N.D., for defendant, appellant, and cross-appellee.

McEvers, Justice.

[¶1] Stephen Zundel appeals a district court judgment declaring Loren and Richard Zundel complied with a lease relating to grain and farm equipment storage, declaring the lease remains in effect, and dismissing Stephen Zundel's eviction action against Loren and Richard Zundel. Loren and Richard Zundel cross-appeal

the judgment awarding them $21,182 in attorney's fees and costs. We affirm in part, reverse in part, and remand.

I

[¶2] Edwin Zundel owned real property in LaMoure County. Approximately five acres of the property, known as the "bin site," contained grain bins and has been used for storing grain and agricultural equipment since 1969. Edwin Zundel and his sons, Loren, Richard, Stephen, and Donald, used the bin site in varying amounts.

[¶3] In June 2006, Edwin Zundel, as general partner of the Zundel Family Real Estate Limited Partnership, leased the bin site to his sons at an annual rate of $400. The lease also included provisions regarding the use of the property, repairs, and default. The lease provided the bin site was to be used primarily for storing crops, farming equipment, and farming supplies. The lease provided the term of the agreement was the life of all tenants. The family partnership subsequently conveyed the bin site to Stephen Zundel and he became the landlord under the lease.

[¶4] A dispute arose in 2014 after Stephen Zundel demanded additional rent of $400 from each tenant. Loren and Richard Zundel refused to pay additional rent and expressed their position that the total annual rent was $400 from all tenants. Stephen Zundel also demanded that repairs be made to the bin site, including removing small trees, repairing electrical panels and boxes, and repairing two buildings and a pole barn.

[¶5] In April 2015 Loren and Richard Zundel sued Stephen Zundel, alleging they complied with the terms of the lease, and Stephen demanded unreasonable repairs be made to the property. Loren and Richard Zundel sought a judgment declaring that they had fulfilled their obligations un-der the terms of the bin site lease. They also sought contribution from Stephen Zundel for rents and repairs because he remained a tenant under the lease.

[¶6] Stephen Zundel denied the allegations and counterclaimed for eviction, alleging Richard and Loren Zundel breached the bin site lease by failing to make repairs and pay additional rent. Stephen Zundel also sought a declaratory judgment seeking to have the lease deemed void or voidable on its ten-year anniversary under N.D.C.C. § 47-16-02, providing a ten-year limit on leases of agricultural land.

[¶7] Loren and Richard Zundel moved for partial judgment on the pleadings, arguing the total annual rent due under the lease was $400 from all tenants. They also argued the lease did not violate N.D.C.C. § 47-16-02 because the bin site was not agricultural land. The district court granted the motion, concluding the total annual rent under the lease was $400. The court also concluded the bin site was not agricultural land and the lease did not violate the provisions of N.D.C.C. § 47-16-02.

[¶8] After a January 2016 trial, the district court declared Loren and Richard Zundel fully complied with the bin site lease and the lease remained in effect. The court also found Stephen Zundel's counterclaims were frivolous and dismissed his counterclaim to evict Loren and Richard Zundel from the property. The court awarded Loren and Richard Zundel attorney's fees for defending Stephen Zundel's frivolous counterclaims. Loren and Richard Zundel requested over $67,000 in attorney's fees. After a hearing, the court awarded Loren and Richard Zundel $21,182 in attorney's fees and costs.

II

[¶9] Stephen Zundel argues the district court erred in granting Loren and

Richard Zundel's motion for judgment on the pleadings, concluding the bin site lease did not violate N.D.C.C. § 47-16-02 because the property covered by the lease is not agricultural land.

[¶10] A party may move for judgment on the pleadings under Rule 12(c), N.D.R.Civ.P. A pleading should not be dismissed under N.D.R.Civ.P. 12(c) unless it appears beyond doubt that no set of facts support a party's claim which would entitle him to relief. *Nelson v. McAlester Fuel Co.*, 2017 ND 49, ¶ 20, 891 N.W.2d 126 (citing *Tibert v. Minto Grain*, 2004 ND 133, ¶ 7, 682 N.W.2d 294). We view the pleading in the light most favorable to the pleading party, and the allegations are taken as true. *Nelson*, at ¶ 20. A district court's decision granting judgment on the pleadings under N.D.R.Civ.P. 12(c) is reviewed de novo. *Nelson*, at ¶ 20.

[¶11] "Statutory interpretation is a question of law, fully reviewable on appeal." *Tangedal v. Mertens*, 2016 ND 170, ¶ 8, 883 N.W.2d 871. Words in a statute are given their plain, ordinary, and commonly understood meaning, unless a contrary intention plainly appears or unless defined by statute. N.D.C.C. § 1-02-02. "Whenever the meaning of a word or phrase is defined in any statute, such definition is applicable to the same word or phrase wherever it occurs in the same or subsequent statutes, except when a contrary intention plainly appears." N.D.C.C. § 1-01-09.

[¶12] The general rules of contract interpretation apply to the interpretation of leases. *Kittleson v. Grynberg Petroleum Co.*, 2016 ND 44, ¶ 10, 876 N.W.2d 443. A contract must be construed as a whole to give effect to each provision if reasonably practicable. N.D.C.C. § 9-07-06. Words are given their plain, ordinary, and commonly understood meaning, unless

a contrary intention plainly appears. N.D.C.C. § 9-07-09. Contract interpretation is a question of law, fully reviewable on appeal. *Kittleson*, at ¶ 10.

[¶13] Resolving this issue requires an analysis of N.D.C.C. § 47-16-02 and the bin site lease. Section 47-16-02, N.D.C.C., states that "[n]o lease or grant of agricultural land reserving any rent or service of any kind for a longer period than ten years shall be valid." This Court has outlined the requirements for a district court to declare an agricultural lease invalid under N.D.C.C. § 47-16-02:

In the jurisdictions where the law restricts the duration of a lease of agricultural land, before a court is justified in declaring it invalid, it must find that the lease is of agricultural land; that the use of the land for agricultural purposes is not excluded; that rent or service is reserved; and that the term is within the restriction.

*Anderson v. Lyons*, 2014 ND 61, ¶ 12, 845 N.W.2d 1 (quoting *Anderson v. Blixt*, 72 N.W.2d 799, 803 (N.D. 1955)). For a court to invalidate an agricultural lease under N.D.C.C. § 47-16-02, all four requirements must be satisfied. *See Blixt*, at 803 (lease satisfied first three requirements, and issue decided was whether the lease extended for a period longer than ten years).

[¶14] Under the bin site lease, the terms "bin site" and "leased property" are synonymous. "Bin site" is defined as "the land not suitable for farming upon which storage bins owned by Landlord and Tenants are built, but does not include the house, yard area, quonset, and pasture land of the Leased Property." Regarding the use of the bin site, the lease provides, "the Leased Property shall be used and occupied only for the purpose of storing crop, farming equipment, and farming supplies and other purposes relating thereto, and

for no other purpose or purposes without the Landlord's written consent."

[¶15] The district court ruled the bin site lease does not violate N.D.C.C. § 47-16-02. The court held the bin site lease is not a lease of agricultural land in part because "[i]n the lease ... the parties agree that this land is not suitable for farming." The court also decided the use of the leased property is not for agricultural purposes:

> In considering what "agricultural purposes" means in the context of the decisions of the North Dakota Supreme Court applicable to N.D.C.C. § 47-16-02, and other courts regarding similar statutory and constitutional provisions, it is clear to this court that grain storage and parking agriculture equipment is not a lease purpose that this section of law seeks to limit in duration.

The district court, in discussing cases from this Court and other courts, stated that "[i]n those opinions courts seem to hold in essence, that agricultural purpose means tilling to raise crops or pasturing livestock."

[¶16] Stephen Zundel argues the bin site lease covers agricultural land because it covers property capable of grain storage, grain handling, and storage of farm equipment. He argues the lease is capable of an agricultural purpose because it allows grain storage, storage of farming equipment and farming supplies, and other agricultural purposes such as grain handling and storage of seed for planting. He also argues that regardless of the lease's language, agricultural activities take place and are anticipated by the lease.

[¶17] We agree with the district court's conclusion that the property covered by the bin site lease is not agricultural land. Section 47-16-02, N.D.C.C., does not define "agricultural land." Additionally, our earlier cases interpreting N.D.C.C. § 47-16-02 have not defined or discussed "agricultural

land." Those cases have decided whether a lease of agricultural land had a duration of more than ten years, *see Lyons*, 2014 ND 61, ¶ 14, 845 N.W.2d 1; *Blixt*, at 807; or was for an agricultural purpose. *See Trauger v. Helm Bros., Inc.*, 279 N.W.2d 406, 411 (N.D. 1979) (mining and removal of sand, gravel, and rock not an agricultural purpose); *Berry-Iverson Co. of N.D., Inc. v. Johnson*, 242 N.W.2d 126, 131-32 (N.D. 1976) (use of land for a radio transmitter tower and associated equipment not an agricultural purpose).

[¶18] Although N.D.C.C. § 47-16-02 does not define "agricultural land," N.D.C.C. § 47-10.1-01(1), relating to agricultural land ownership by aliens, does define that term:

> In this chapter, unless the context or subject matter otherwise requires:
>
> 1. "Agricultural land" means land capable of use in the production of agricultural crops, livestock or livestock products, poultry or poultry products, milk or dairy products, or fruit and other horticultural products ....

While the phrase "[i]n this chapter" appears to limit the definition of agricultural land to N.D.C.C. ch. 47-10.1, we see no reason why this definition cannot be applied to "agricultural land" as it is used in N.D.C.C. § 47-16-02. *See* N.D.C.C. § 1-01-09 ("Whenever the meaning of a word or phrase is defined in any statute, such definition is applicable to the same word or phrase wherever it occurs in the same or subsequent statutes, except when a contrary intention plainly appears.").

[¶19] The bin site lease plainly states the leased property is not suitable for farming. The lease also excludes pasture land from the property covered by the lease. The definiteness of contract terms has bearing on both the parties' intent to be bound by the agreement, and on the

finality of the agreement. *Lenthe Invs., Inc. v. Serv. Oil, Inc.*, 2001 ND 187, ¶ 11, 636 N.W.2d 189. We conclude the property covered by the lease is not agricultural land. Because the lease was not for agricultural land, the lease cannot be invalidated under N.D.C.C. § 47-16-02, and it is unnecessary to determine whether the other requirements for invalidating an agricultural lease were met. The district court did not err in concluding the lease does not violate N.D.C.C. § 47-16-02.

### III

[¶20] Stephen Zundel argues the district court erred in dismissing his eviction action and declaring Loren and Richard Zundel fully complied with the lease. He argues the court clearly erred in finding Loren and Richard Zundel maintained the bin site in good condition and did not breach the lease.

[¶21] We review a district court's findings of fact under the clearly erroneous standard of N.D.R.Civ.P. 52(a). *C&C Plumbing and Heating, LLP v. Williams Cty.*, 2014 ND 128, ¶ 6, 848 N.W.2d 709. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, after reviewing the record, we are left with a definite and firm conviction a mistake has been made. *Prairie Supply, Inc. v. Apple Elec., Inc.*, 2015 ND 190, ¶ 11, 867 N.W.2d 335. In a bench trial, the district court decides credibility issues and we do not second-guess the court on its credibility decisions. *C&C Plumbing*, at ¶ 6.

[¶22] Stephen Zundel argues Loren and Richard Zundel breached the bin site lease by failing to make certain repairs to the bin site. Section six of the lease titled "Repairs," states, "Tenants shall, at their expense, make all repairs as shall be rea-sonably necessary to keep the Leased Property in good condition and repair."

[¶23] The bin site lease does not define "good condition and repair." The district court found, on the basis of testimony at trial, the Zundel family equated "good condition and repair" with "functional and operable," and the bin site has remained functional since the parties executed the lease:

The credible testimony showed that the condition of the bin site is similar to, or as good as, other bin sites in the area. The credible testimony further established that the bin site is being and has been continuously used, as a functional and operable bin site, from 1969 to the present.

The credible evidence showed that the overwhelming concern of the Zundel family for the bin site was that it be functional. That is what the parties intended by the lease's requirement that the bin site be kept in good condition and repair. The bin site has been functional since 1969 through the present. It serves its function for the storage of grain and related farm equipment. The evidence showed that, with respect to what constitutes "good condition and repair," the Zundel family was not concerned with cosmetics or aesthetics, but was concerned with function.

[¶24] The district court found Loren and Richard Zundel maintained the bin site "in good condition by making repairs, as needed, to keep the site in functional working condition." In addressing Stephen Zundel's demands to repair the bin site, the court found many of his requested repairs, such as removing small trees from the site, "were solely cosmetic in nature and unrelated to the functioning of the bin site." The court also found Stephen Zundel's requests to repair two buildings and a pole barn were "patently unreasonable and ab-

surd." The court found the two buildings were old and worn when the lease was executed, but still served their intended purpose, which was to keep rain and snow off of equipment. The court found wholesale repair of the buildings was not necessary to keep the bin site functional. The court found "Stephen made those demands [to repair the buildings], along with the many demands for cosmetic repair, solely in an effort to evict his brothers from the bin site and not in a genuine effort to keep the bin site in good condition and repair, as contemplated by the lease." The court found "Stephen offered no evidence that the bin site has not been kept in good condition when compared to its condition upon making the lease in 2006," and found Loren and Richard Zundel did not breach the "Repairs" section of the lease.

[¶25] The district court made numerous findings relating to repairs on the bin site. Those findings have support in the record on the basis of Loren and Richard Zundel's testimony. We conclude the court did not clearly err in finding Loren and Richard Zundel maintained the bin site in good condition and did not breach the bin site lease. We are not left with a definite and firm conviction a mistake has been made. We also conclude the court did not err in dismissing Stephen Zundel's counterclaim for eviction.

## IV

[¶26] Loren and Richard Zundel argue the district court abused its discretion by not awarding them all of their attorney's fees and costs incurred in the action after finding Stephen Zundel's counterclaims were frivolous under N.D.C.C. § 28-26-01(2). Stephen Zundel argues his counterclaims were not frivolous and attorney's fees should not have been awarded to Loren and Richard.

[¶27] Under N.D.C.C. § 28-26-01(2), a district court has discretion to decide whether a claim is frivolous and to determine the amount and reasonableness of an award of attorney's fees. *Serv. Oil, Inc. v. Gjestvang*, 2015 ND 77, ¶ 47, 861 N.W.2d 490. "[W]hen the court decides a claim is frivolous, it must award attorney fees." *Id.* A court abuses its discretion if it acts in an arbitrary, unreasonable, or unconscionable manner, it misinterprets or misapplies the law, or its decision is not the product of a rational mental process leading to a reasoned decision. *Datz v. Dosch*, 2014 ND 102, ¶ 22, 846 N.W.2d 724.

[¶28] Under N.D.C.C. § 28-26-01(2), frivolous claims are those having "such a complete absence of actual facts or law that a reasonable person could not have thought a court would render judgment in that person's favor." "Authorizations of attorney's fees for frivolous claims are not meant to chill enthusiasm and creativity in pursuing factual or legal theories, and a court should not use the wisdom of hindsight to determine whether claims are frivolous." *Strand v. Cass Cty.*, 2008 ND 149, ¶ 11, 753 N.W.2d 872 (quoting *Soentgen v. Quain & Ramstad Clinic, P.C.*, 467 N.W.2d 73, 84-85 (N.D. 1991)). "If the law is unclear or unsettled on a particular claim, that circumstance makes it more likely that a party might reasonably expect to prevail on that claim." *Strand*, at ¶ 11 (quoting *Soentgen*, at 85).

[¶29] After trial, the district court found Stephen Zundel's counterclaims were frivolous under N.D.C.C. § 28-26-01(2):

• He frivolously claimed entitlement to $400 rent from each tenant when the lease unambiguously states that the total rent due from all tenants is $400 per year.

• He frivolously claimed the lease was subject to the 10-year limitation in N.D.C.C. § 47-16-02 when the law, for

multiple reasons, clearly provides that the lease is not subject to that provision.

- He frivolously claimed he was entitled to eviction for the alleged breach of section 8 of the lease when he failed to follow the fundamental written notice requirement needed to seek eviction under that section and, furthermore, the claims had no factual support.
- He frivolously claimed he was entitled to eviction under section 6 of the lease when none of the breaches he alleged could arguably constitute a material breach.
- He frivolously attempted to advance multiple unpleaded claims at trial.

Simply stated, there was such a complete absence of actual facts or law in support of Stephen's claims that a reasonable person could not have thought a court would render judgment in his favor. Furthermore, the evidence showed that Stephen did not make the claims in good faith, but to harass his brothers because of unrelated disputes and family tensions.

[¶30] Loren and Richard Zundel requested all of their attorney's fees incurred in this action, $67,754.50. After a hearing on the attorney's fees in July 2016, Judge Daniel Narum recused himself and Judge Jay Schmitz was assigned. Judge Schmitz reviewed the record and indicated Stephen Zundel's counterclaims related to the amount of rent due under the lease, whether the lease violated N.D.C.C. § 47-16-02, and unjust enrichment were disposed of by the judgment on the pleadings. Judge Schmitz indicated the record did not include itemized billing statements, stating that "the record does not allow me to determine how much time was actually spent on a particular task." Judge Schmitz relied on an attorney's affidavit regarding time spent on the case and awarded Loren and Richard Zundel $14,588.50 as "a rea-

sonable estimate of attorney's fees for the motion for judgment on the pleadings."

[¶31] Judge Schmitz indicated the primary issue at trial involved Loren and Richard Zundel's claim that they complied with the lease and Stephen Zundel's remaining counterclaim that they breached the lease. Judge Schmitz indicated "N.D.C.C. § 28-26-01 does not authorize an award of attorney's fees to [Loren and Richard] for proving their claim," and stated it was difficult to determine "what percentage of the evidentiary presentations were attributable to [Stephen's] counterclaim rather than to [Loren and Richard's] claims." Judge Schmitz also recognized that Judge Narum found Stephen Zundel's counterclaim regarding breach of the lease was frivolous, and "some award of attorney's fees is both appropriate and required." Judge Schmitz awarded Loren and Richard Zundel $4,575 as "a reasonable award of attorney's fees for time spent at trial and for the post-trial briefings [15 hours @ $305]."

[¶32] Stephen Zundel argues his counterclaims were not frivolous. Specifically, he argues his counterclaim related to whether the lease violated N.D.C.C. § 47-16-02 was not frivolous because he relied on an earlier district court decision holding that property containing grain storage bins was "agricultural land."

[¶33] When Stephen Zundel brought his counterclaim, the definition of "agricultural land" under N.D.C.C. § 47-16-02 was unsettled. The district court case relied on by Stephen Zundel was appealed; however, this Court did not address the court's interpretation of "agricultural land" under N.D.C.C. § 47-16-02. *See Knudson v. Kyllo*, 2012 ND 155, ¶ 11, 819 N.W.2d 511. Although we have concluded the leased property here is not agricultural land, that does not mean Stephen Zundel's

counterclaim had such a complete absence of facts and law that he could not have reasonably expected a favorable judgment. *See Soentgen*, 467 N.W.2d at 85. We conclude Judge Narum abused his discretion in finding Stephen Zundel's counterclaim related to N.D.C.C. § 47-16-02 was frivolous. Because Judge Narum found Stephen Zundel made his claims to harass his brothers, we conclude Judge Narum did not abuse his discretion in finding Stephen Zundel's remaining counterclaims were frivolous.

[¶34] Loren and Richard Zundel argue the district court should have awarded them all of their attorney's fees for defending Stephen Zundel's frivolous counterclaims. Because the record includes only an attorney's affidavit regarding fees, we recognize Judge Schmitz's difficulty in awarding attorney's fees to Loren and Richard Zundel for defending Stephen Zundel's frivolous counterclaims disposed of in the judgment on the pleadings and at trial. Regarding attorney's fees for defending Stephen Zundel's frivolous counterclaim at trial, Judge Schmitz indicated he could not accurately determine what evidence presented over a two-day trial was "attributable to [Stephen's] counterclaim rather than to [Loren and Richard's] claims." On this record, we conclude Judge Schmitz did not abuse his discretion in awarding Loren and Richard Zundel $4,575 in attorney's fees for defending Stephen Zundel's frivolous counterclaim at trial.

[¶35] With regard to attorney's fees awarded for Loren and Richard Zundel's motion for judgment on the pleadings, it appears from the parties' briefs and order granting judgment on the pleadings that a majority of the parties' argument and court's discussion involved the interpretation of N.D.C.C. § 47-16-02. Because we conclude Judge Narum abused his discretion in finding Stephen Zundel's counterclaim relating to N.D.C.C. § 47-16-02 was frivolous, we reverse that part of the judgment awarding Loren and Richard Zundel attorney's fees. We remand to the district court to redetermine the award of attorney's fees related to the frivolous counterclaims disposed of on the motion for judgment on the pleadings. On remand, the court may receive additional evidence related to attorney's fees for Loren and Richard Zundel's motion for judgment on the pleadings.

V

[¶36] We have considered the parties' remaining arguments and conclude they are either unnecessary to our decision or without merit. The judgment is affirmed in part, reversed in part, and remanded for further proceedings.

[¶37] Lisa Fair McEvers

Daniel J. Crothers

Carol Ronning Kapsner, S.J.

William A. Herauf, D.J.

Gerald W. VandeWalle, C.J.

[¶38] The Honorable William A. Herauf, D.J., sitting in place of Tufte, J., disqualified.

[¶39] The Honorable Jon J. Jensen was not a member of the Court when this case was heard and did not participate in this decision. Surrogate Judge Carol Ronning Kapsner, sitting.